BEALL & BURKHARDT, APC
WILLIAM C. BEALL, STATE BAR NO. 97100
ERIC W. BURKHARDT, STATE BAR NO. 132812
CARISSA N. HOROWITZ, STATE BAR NO. 274814
1114 STATE STREET
LA ARCADA BUILDING, SUITE 200
SANTA BARBARA, CALIFORNIA, 93101
(805) 966-6774, FAX (805) 963-5988

Counsel for Alleged Debtor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

|  |  |
|---|---|
| In re | ) Bk. No. 9:22-bk-10674-RC |
|  | ) Chapter 7 |
| John E. King, | ) |
|  | ) **ADDITIONAL REPLY RE RENEWED** |
| Alleged Debtor. | ) **MOTION FOR DAMAGES PURSUANT** |
|  | ) **TO 11 U.S.C. 303(i)** |

Date: January 27, 2026
Time: 1:00 p.m.
Place: 1415 State Street
Courtroom 201
Santa Barbara CA 93101

Dismissed Alleged Debtor John E. King hereby brings his Additional Reply in support of his renewed his request that the Court grant damages as authorized under 11 U.S.C. 303(i).

Although the primary reason to file is to respond to Docket Number 360 entitled "Wolverine Endeavors VIII, LLC's Supplemental Brief in Support of Opposition to Alleged Debtor's Renewed Motion for Damages" ('the Brief'), there are additional issues to be discussed as well.

## WOLVERINE'S BRIEF

Having nothing relevant to add, the Brief is an unsupported diatribe which states as loudly as possible (but without evidentiary support) that John King and all of his counsel are bad people. Before discussing what the Brief says, the Court needs to focus on what it does not say.

Wolverine Endeavors VIII, LLC ("Wolverine") has consistently misdescribed the proper standard for allowance of the most common damages granted under section 303(i), namely the fees and costs associated with defense of the dismissed involuntary petition. Wolverine seizes on a stray dictum in the case *Higgins v. Vortex Fishing Sys., Inc.* 379 F. 3d 701 (9th Cir. 2004). Since *Higgins* in fact affirmed an allowance of fees, any discussion of how such fees could have been disallowed is dicta. Furthermore, Wolverine always fails to acknowledge the comment by the Ninth Circuit in *Higgins* itself. "Although we adopt the totality of the circumstances test as the appropriate standard under § 303(i)(1), we do not abandon the premise that "any petitioning creditor in an involuntary case ... should expect to pay the debtor's attorney's fees and costs if the petition is dismissed." *In re Kidwell,* 158 B.R. 203, 217 (Bankr.E.D.Cal.1993)". 379 F.3d at 707. Furthermore, in all the many rounds of briefing, Wolverine has not cited cases in which fees and costs were actually disallowed.

Wolverine makes no argument that the fees and costs incurred were not reasonable. In fact, the opposite is true, as is described below. Instead, Wolverine chooses to vilify counsel, without evidence to support its vilification. The Brief makes libelous accusations against John King, William Beall, and by reference Beall & Burkhardt, APC. Specifically, William Beall is accused of committing perjury no less than four times in the Brief, of conspiracy at least twice, and of witness tampering at least once (the "Beall Accusations"). None of the Beall Accusations is specific. Despite the multiple accusations of perjury, the Brief at no point describes a statement made under oath which it contends to be knowingly false. The same is true for the multiple accusations of perjury against John King.

Moreover, Wolverine's complaints about the behavior of John King and his counsel almost all relate to the Carole King case. Wolverine's desperation has it arguing that Beall & Burkhardt, APC did not

represent Carole King, as she was sufficiently compromised to prevent her from directing day to day decisions, despite the fact that the services were competent, there was no conflict, and the services benefitted Carole King.  Wolverine then leaps into even deeper water, suggesting that because John King primarily directed the defense of both involuntary petitions, he was not entitled to representation in his case either.

The other allegations are allegations, essentially, of fraudulent transfers.  There is no evidence of any such transfers.  This case was filed in 2022, and Wolverine has been alleging fraudulent transfer without evidence for three and one-half years.  In fact, the Court even invited evidence to be provided when it entered an Order to Show Cause for appointment of a Trustee in the summer of 2023.  Wolverine argued that a refinance of a secured loan by an entity in which John and Carole King had a minority interest showed such a transfer!  Needless to say, the Court denied relief.

The facts now are as the facts have always been.  Wolverine purchased a junior lien position.  For $1,000.  It was out of the money, as the assets were insufficient to pay the senior liens.  It knew it was out of the money, and on the petitions themselves it stated under oath that its position was wholly unsecured.  Since then it has allegedly spent over $1.1 million trying to force the senior lienholders to cut it in to the money.  The filing of the Rico suit in the District Court is more of the same.  The dismissed debtor trusts the Court to be aware that no allegation in that complaint is evidence.

There is discussion in the Brief about failures to make discovery.  None of those discussions relate to the John King case.  Wolverine's carping is procedural only.  It asked nearly identical questions of John King, and demanded nearly identical documents from him.  In September of 2023, John King responded to multiple discovery requests, including responding to a document demand that had 255 separate requests.  In the recent round (as will be more detailed below), Wolverine sent (many) more discovery demands and subpoenas.  It was apparently satisfied with the results, as only one Motion to Compel was filed, and that has apparently been peaceably resolved.

The Court should also recall that, as has been proven previously, prior to any of the massive subpoena parade foisted by Wolverine, the Kings <u>voluntarily</u> produced evidence of their obligations, which are essentially the only documents that ever had any relevance to this case.

Furthermore Wolverine in its Brief only attacks actions of John King and his counsel. It makes no effort whatsoever to defend its own actions. Bad faith is about the conduct and purposes of the Petitioning Creditors, not the alleged Debtor(s). In particular, Wolverine has never in its many briefs, responded in any way or attempted to justify the single most important argument that the case was filed in bad faith. In the petitions themselves, Wolverine admitted under oath that it was out of the money. It knew from day one in these cases that senior liens were larger than the assets the Kings owned.

In addition, Wolverine has never provided any evidence, in fact really never tried to provide any evidence, of any avoidable transfer by the Kings which could have been pursued by the estate if the involuntary petitions had been granted.

Thus it knew from day one that it would never receive any distribution from an estate if the involuntary petitions had been granted. This is incontrovertible evidence that the involuntary petitions were filed for an improper purpose, which is bad faith. At no time in either case has Wolverine ever suggested any type of <u>proper</u> purpose for the filing of the petitions.

## BAD FAITH

Thus the Court is led to the issue of bad faith. Bad faith is determined as of the date the case is filed. However, Wolverine's post filing actions are evidence of its intent as of the filing date. And its actions make clear its intent. Its intent was to litigate in a scorched earth fashion until the Kings' family members was compelled to pay it off to go away.

That scorched earth litigation started at the beginning of the case and has continued unabated. The most recent round of pleadings show how Wolverine reacts to losing-by attacking. The Brief itself is a primer of Bad Faith. Wild unsupported accusations of multiple felonies, not only by John King but by his counsel, are the defining characteristic of the Brief. Not only are they libelous and unsupported, they are

also irrelevant, as they relate to testimony in the Carole King case, and have nothing to do with the competence or reasonableness of services. Those Wolverine has never challenged.

Meanwhile, Wolverine's abuse of the generous discovery rules continues unabated. In this last round, on September 22, Mr. Donoyan sent to counsel for Mr. King proposed subpoenas to approximately 48 entities. All were wildly overbroad. In fact, none of the entities subpoenaed knows or knew anything about Wolverine's bad faith. The undersigned attempted to meet and confer, but Mr. Donoyan hurriedly hung up on the first meet-and-confer all (to take another call) while it was still incomplete despite agreeing to at least some changes. Emails and phone calls to Mr. Donoyan were then met with the communication that he no longer worked at the firm, without a forwarding address. When Mr. Donoyan eventually emerged at a new firm, he twice failed to make a call that had been prearranged and served the subpoenas without even making the changes to which he had previously agreed.

Among the subpoenas were one to Mr. King, and one to Beall & Burkhardt, APC. Documents were produced by both parties. 26 categories of documents were demanded from Mr. King. Documents were demanded from Beall & Burkhardt, APC that obviously violated attorney-client privilege. In addition, the document demand required Beall & Burkhardt, APC to scan through thousands of emails related to this case to produce irrelevant "communications". In the Brief Wolverine complains that all documents it received had been received before. With the massive discovery demands done previously, both in this Court and in the Superior Court, it is no surprise that nothing new was received. Of course, Mr. King believes the Court should infer the intent to overlitigate from the constant demand for documents which have already been produced.

<u>**ONGOING FEES**</u>

As time goes on, additional fees are incurred. The last request was in Docket 342, seeking $218,767.96 (after credits) for fees and costs through August 13, 2025. Attached to this pleading as Exhibit A are the Beall & Burkhardt, APC billings from August 14, 2025 through December 31, 2025. They total:

| Month | Fees | Costs | |
|---|---|---|---|
| August 14-31 | $1,365.00 | | |
| September | $2,925.00 | | |
| October | $7,605.00 | | |
| November | $4,550.00 | $19.44 | |
| December | $ 715.00 | | |
| Totals | $17,160 | $19.44 | $17,179.44 |

Thus the current request is $235,947.40. Of course, there will be a substantial bill for January, 2026, as well.

## WOLVERINE'S REQUEST TO THE SUPERIOR COURT

Wolverine has filed a Motion with the Superior Court seeking to increase its judgment by a whopping $1,127,511.04 for the fees and costs in pursuing the Kings since it purchased the judgment for $1,000 shortly before filing the involuntary cases. Lest Wolverine argue that this is apples-and-oranges with regard to the Kings claims for fees and costs in this case, the Superior Court requests fees from the following counsel, all of whom only represented Wolverine in these cases, except for Myron Moskowitz who represented Wolverine in appeals both in the Bankruptcy and Superior Court fora:

| Attorney | Hourly rate per Laffer Matrix | Total |
|---|---|---|
| K. Todd Curry | $1,141 | $23,732.80 |
| Myron Moskowitz | $1,500 | $174,715.94 |
| Brett Ramsaur | $839 | $34,150.50 |
| Casey Donoyan | $1141 | $266,089.68 |
| Total | | $498,688.92 |

Essentially, Wolverine seeks to add to its judgment approximately twice the fees sought by the Kings for the completely vain and objectively useless services of filing these cases. To put it bluntly, for <u>losing</u>.

Meanwhile, let's consider the factors, education and experience, in required by the Laffer index trumpeted by Wolverine in its fee request as setting reasonable fees.

| Attorney | Law School | Years in Practice | Hourly Rate |
|----------|-----------|-------------------|-------------|
| Curry | University of San Diego | 36 | $1141 |
| Moskowitz | Berkeley | 58 | $1500 |
| Ramsaur | Chapman | 17 | $839 |
| Donoyan | McGeorge | 22 | $1141 |
| Beall | Yale | 45 | $650 |

Clearly there is a disconnect here. Not even the graduates of the institution formerly known as Boalt Hall believe it is the equal of Yale, the preeminent law school in the nation. McGeorge, USD, and Chapman are all fine law schools, but pale in comparison. Beall's years in practice more than exceed the <u>sum</u> of Ramsaur's and Donoyan's, his principal adversaries in this case. Based upon the position taken by Wolverine before the Superior Court, the Court should grant an enhancement to the Beall & Burkhardt, APC fees of somewhere between 50% and 100%.

1

2                                     ## CONCLUSION

3          Wolverine has no good faith defense to paying the costs and fees it forced upon the alleged

4   Debtor in this involuntary case, and it is time for it to pay.  Wolverine has never identified any good faith

5   purpose for filing two involuntary cases from which it knew it would receive no dividend.  The Court

6   needs to find Wolverine in bad faith and issue an appropriate sanction.

7

8                                                   Respectfully Submitted,

9

10  Dated: __1/8/26__

11

12                                                  By:_____
                                                    William C. Beall, Counsel for John E. King,
13                                                  dismissed Debtor

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF WILLIAM C. BEALL

I, William C. Beall, declare and state as follows:

1.      I am an attorney at law licensed in the State of California, duly admitted to practice in the Central District of California and in the above-entitled court and am a partner of the law firm of Beall & Burkhardt, APC, counsel for the alleged Debtors in this case. I am the designated professional responsible for overseeing the billing in this matter. I have personal knowledge of the facts set forth herein, and if called upon to do so, could and would competently testify to those facts.

2.      Attached hereto as Exhibit A incorporated herein by this reference are billings sent by Beall & Burkhardt, APC to John King during the course of this case. These fees are separate from any fees and costs reflected in prior bills presented to the Court as part of the Carole King involuntary case, or any fees and costs previously supplied to the Court. Beall & Burkhardt, APC does not represent either John or Carole King with regard to any other matters. All fees were incurred in the defense of John's individual petition.

3.      The bills submitted by Beall & Burkhardt for the time period from August of 2025 through December of 2025, essentially complies with the United States Trustee Guidelines A and B. I have reviewed Local Bankruptcy Rule 2016-1, and this application generally complies with that Rule. Although not subject to those rules, I represent debtors-in-possession and trustees in many cases and our billings generally reflect the specific demands of the Office of the United States Trustee.

4.      Beall & Burkhardt has been paid for each of the services described in Exhibit A by John and/or Carole King.

5.      Mr King has provided me with a Motion styled "Notice of Motion and Motion for Attorney's Fees and Costs" filed by Wolverine in the case East West Bank v. King, case No CGC-10-505989 in the Superior Court for the County of San Francisco. Filed with it were Declarations from (among others) Casey Z. Donoyan, K. Todd Curry, Myron Moskowitz, and Brett H. Ramsaur. Edited portions of each of those documents are attached hereto as Exhibits B, C, D, E and F.

6.      On September 22, Mr. Donoyan sent me proposed subpoenas to approximately 48 entities. All were wildly overbroad. I would argue that all documents demanded were completely irrelevant. None

of the entities subpoenaed (except perhaps Mr.King and me) knows or knew anything about Wolverine's bad faith.  I attempted to meet and confer, but Mr. Donoyan hurriedly hung up on the first meet-and-confer all (to take another call) while it was still incomplete despite agreeing to at least some changes.  Emails and phone calls to Mr. Donoyan were then met with the communication that he no longer worked at the firm, without a forwarding address.  When Mr. Donoyan eventually emerged at a new firm, he twice failed to make a call that had been prearranged and served the subpoenas without even making the changes to which he had previously agreed.

7.    Among the subpoenas were one to Mr. King, and one to Beall & Burkhardt, APC. Documents were produced by both parties.  26 categories of documents were demanded from Mr. King. Documents were demanded from Beall & Burkhardt, APC that obviously violated attorney-client privilege. In addition, the document demand required Beall & Burkhardt, APC to scan through thousands of emails related to this case to produce irrelevant "communications".

I declare under penalty of perjury that the foregoing is true and correct.

Dated: __1/8__, 2026

William C. Beall

10

BRUNO & TERENCE HARDS, APC
1114 STATE STREET
SUITE 200
SANTA BARBARA, CA 93101

September 02, 2025

*Invoice submitted to:*

JOHN AND CAROL KING

In Reference To:INVOLUNTARY PETITIONS

Invoice #24028

John and Carol King                                                                      Page    2

|            |    |                                                                      | Hrs/Rate    | Amount |
|------------|----|----------------------------------------------------------------------|-------------|--------|
| 8/27/2025  | WB | Review and analyze Opposition of Fence Factory (.4); review and analyze opposition of Wolverine (.7) | 1.10 650.00/hr | 715.00 |
| 8/30/2025  | WB | Prepare Reply Brief                                                   | 1.00 650.00/hr | 650.00 |

SUBTOTAL:                                                                    [

**For professional services rendered**

2.1
650/hr                    $ 1365.00

BEALL & BURKHARDT, APC

1114 STATE STREET
SUITE 200
SANTA BARBARA, CA 93101

October 01, 2025

*Invoice submitted to:*

JOHN AND CAROL KING

In Reference To:INVOLUNTARY PETITIONS
Invoice #24062

Professional Services

|  |  | | Hrs/Rate | Amount |
|---|---|---|---|---|
| John | | | | |
| 9/2/2025 | WB | Revise reply brief | 0.30<br>650.00/hr | 195.00 |
| 9/9/2025 | WB | Court appearance regarding Motion for Damages | 1.00<br>650.00/hr | 650.00 |
|  | WB | Telephone conference with John King and team re hearing and next steps | 0.60<br>650.00/hr | 390.00 |
| 9/10/2025 | WB | Prepare Scheduling Order and Notice of Lodgment | 0.50<br>650.00/hr | 325.00 |
| 9/12/2025 | WB | E-mail to Brian Fittipaldi re hearings 9/9. | 0.20<br>650.00/hr | 130.00 |
| 9/24/2025 | WB | E-mail exchange with Casey Donoyan and client re subpoenas | 0.80<br>650.00/hr | 520.00 |
| 9/25/2025 | WB | Review and analyze transcript (re fee letter) | 0.80<br>650.00/hr | 520.00 |
| 9/26/2025 | WB | Telephone conference with Donoyan re subpoenas | 0.30<br>650.00/hr | 195.00 |
| SUBTOTAL: | | | [    4.50 | 2,925.00] |
| **For professional services rendered** | | | 4.50 | $2,925.00 |

BEALL & BURKHARDT, APC

1114 STATE STREET
SUITE 200
SANTA BARBARA, CA 93101

November 03, 2025

*Invoice submitted to:*

JOHN AND CAROL KING

In Reference To: INVOLUNTARY PETITIONS

Invoice #24085

Professional Services

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| **John** | | | | |
| 10/3/2025 WB | Telephone conference with Lisa Hamon re subpoena and response | | 0.60 650.00/hr | 390.00 |
| 10/4/2025 WB | E-mail exchange re subpoenas | | 0.50 650.00/hr | 325.00 |
| 10/6/2025 WB | E-mail exchange with Casey Donoyan re subpoenas | | 0.30 650.00/hr | 195.00 |
| 10/7/2025 WB | Prepare declaration of WCB re subpoena issues | | 0.60 650.00/hr | 390.00 |
| WB | E-mail exchange re subpoenas | | 0.50 650.00/hr | 325.00 |
| 10/8/2025 WB | Telephone conference with John King re discovery | | 0.50 650.00/hr | 325.00 |
| WB | Start preparing responses to Interrogatories | | 1.30 650.00/hr | 845.00 |
| 10/27/2025 WB | Telephone conference with Mimi Lyon re discovery | | 0.20 650.00/hr | 130.00 |
| WB | Prepare discovery responses | | 1.00 650.00/hr | 650.00 |
| WB | Prepare responses to Interrogatories | | 0.70 650.00/hr | 455.00 |

John and Carol King

Page    2

| Date | | Description | Hrs/Rate | Amount |
|------|---|-------------|----------|--------|
| 10/27/2025 | WB | Prepare responses to document demand | 0.70 650.00/hr | 455.00 |
| | WB | Prepare responses to document demand | 0.40 650.00/hr | 260.00 |
| | WB | Telephone conference with John King re discovery responses | 0.80 650.00/hr | 520.00 |
| 10/28/2025 | WB | Telephone conference with Judy (Monterey County) re subpoena | 0.30 650.00/hr | 195.00 |
| | WB | Redact documents (.5); revise discovery responses (.4) | 0.90 650.00/hr | 585.00 |
| | WB | E-mail exchange re redactions, etc. | 0.40 650.00/hr | 260.00 |
| | WB | Revise discovery responses (.3); e-mail to Casey Donoyan and Lior Katz (.2) | 0.50 650.00/hr | 325.00 |
| 10/30/2025 | WB | Review and analyze Motion to Compel (GHM) (.5); review and analyze Local Rule (.5); e-mail exchange with Michael Haupt re Motion to Compel (.3) | 1.30 650.00/hr | 845.00 |
| | WB | Telephone conference with Michael Haupt and Lisa Hamon re Motion to Compel | 0.20 650.00/hr | 130.00 |

SUBTOTAL:                   [     11.70     7,605.00]

**For professional services rendered**      **11.70**     **$7,605.00**

                                           $7,605.00

BEALL & BURKHARDT, APC
1114 STATE STREET
SUITE 200
SANTA BARBARA, CA 93101

December 02, 2025

*Invoice submitted to:*

JOHN AND CAROL KING

In Reference To: INVOLUNTARY PETITIONS

Invoice #24096

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| | John | | | |
| 11/6/2025 WB | Review and analyze GHM response to motion to compel | | 0.30 650.00/hr | 195.00 |
| 11/7/2025 WB | Telephone conference with Lisa Hamon re subpoena production | | 0.60 650.00/hr | 390.00 |
| WB | Review and analyze email folders re discovery responses | | 0.70 650.00/hr | 455.00 |
| 11/10/2025 WB | Review and analyze documents re response to subpoena | | 0.60 650.00/hr | 390.00 |
| WB | E-mail to Paul Ready re documents to be produced (.2); prepare privilege log (1.3); search for responsive documents (.4) | | 1.90 650.00/hr | 1,235.00 |
| 11/12/2025 WB | Review and analyze Wolverine reply re GHM motion to compel | | 0.50 650.00/hr | 325.00 |
| 11/14/2025 WB | Complete document production and affadavit of custodian | | 0.50 650.00/hr | 325.00 |
| 11/17/2025 WB | Review and analyze tentative decision re motion to compel and e-mail exchange re same | | 0.40 650.00/hr | 260.00 |
| WB | Telephone conference with Lisa Hamon re discovery issues | | 0.20 650.00/hr | 130.00 |
| 11/18/2025 WB | Court appearance regarding motion to compel (GHM) | | 1.30 650.00/hr | 845.00 |

John and Carol King

| | Hrs/Rate | Amount |
|---|---|---|
| SUBTOTAL: | [    7.00 | 4,550.00] |
| **For professional services rendered** | **7.00** | **$4,550.00** |

Additional Charges :

| | | |
|---|---|---|
| 11/1/2025 Postage | | 4.44 |
| Photocopies | | 15.00 |
| **Total costs** | | **$19.44** |
| **Total amount of this bill** | | **$4,569.44** |

BEALL & BURKHARDT, APC

1114 STATE STREET
SUITE 200
SANTA BARBARA, CA 93101

January 05, 2026

*Invoice submitted to:*

JOHN AND CAROL KING

In Reference To: INVOLUNTARY PETITIONS

Invoice #24113

Professional Services

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| **John** |  |  |  |  |
| 12/13/2025 WB | Review and analyze joint stipulation re motion to compel | | 0.50 650.00/hr | 325.00 |
| 12/22/2025 WB | Review and analyze Wolverine pleading | | 0.60 650.00/hr | 390.00 |
| | SUBTOTAL: | | [       1.10 | 715.00] |
| | **For professional services rendered** | | **1.10** | **$715.00** |

Armen Manasserian (SBN 288199)
Scott O'Halloran (SBN 325432)
**MANASSERIAN LAW, APC**
35 Hugus Alley, Suite 210
Pasadena, California 91103
Tel.: (626) 469-0500
Fax: (626) 469-0510
Email: armen@ml-apc.com

Attorneys for Assignee of Record,
Wolverine Endeavors VIII, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| EAST WEST BANK, a California corporation, | Case No.: CGC-10-505989 |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS** |
| v. | Filed concurrently with: |
| JOHN E. KING, an individual; Carole D. King, an individual, | Declaration of Armen Manasserian;<br>Declaration of Arya Channaveeraiah;<br>Declaration of Oksana Manasserian;<br>Declaration of Casey Donoyan;<br>Declaration of Todd Curry;<br>Declaration of Myron Moskovitz;<br>Declaration of Jason Marks;<br>Declaration of Brett Ramsaur; and<br>[Proposed] Order. |
| Defendants. | |
| | Date:      February 18, 2026<br>Time:      9:00 a.m.<br>Dept.:     301<br>Judge:    Hon. Christine Van Aken |

1

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS

language, without a prevailing party requirement, the statute harmonizes with subsequent sections (e.g., §§ 685.070, 685.080) and does not contain any surplus terms. (See *Valencia*, at p. 357 [warning that "'[a] construction making some words surplusage is to be avoided'"].) We see no reason why a court could not assess whether interim costs of enforcing a judgment are reasonable and necessary just as adeptly as it could evaluate final costs. Therefore, we conclude the Legislature did not intend section 685.040 to include a prevailing party requirement.

Likewise, section 685.070 does not mandate that the creditor wait until successful resolution of an enforcement action before filing a cost memorandum . . . Such an interpretation, which incentivizes delay tactics by a debtor who has already resisted paying a debt, cannot be the intent of the Legislature.

*G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal. App. 5th 542, 551-52.

**B.    Wolverine is entitled to recover post-judgment attorney's fees.**

Wolverine's judgment includes an award of contractual attorney's fees.  (AM Decl., Exh. 1.)  Accordingly, Wolverine may recover its post-judgment attorney's fees pursuant to Code of Civil Procedure sections 685.040 and 685.080, and their progeny.

Wolverine has complied with the requirements of Section 685.080:  (1) Wolverine seeks to recover fees by noticed motion, (2) Wolverine only seeks the fees incurred over the last two years, (3) the notice of motion describes the costs and total amount, (4) Wolverine has concurrently filed several declarations substantiating the claimed costs, and (5) Wolverine has served this motion on the Kings.  Accordingly, Wolverine may recover post-judgment attorney's fees pursuant to Section 685.080.

**C.    The Lodestar Method**

"The 'lodestar' figure has, as its name suggests, become the guiding light in our fee-shifting jurisprudence.  We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee" sought by an applicant to recover attorney's fees." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546, 565 (1986).

The lodestar figure is "[t]he number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 4095. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee

17

1    award." *Ibid.* (citing *Margolin v. Regional Planning Com.* (1982) 134 Cal. App. 3d 999, 1004–

2    05). "[T]he lodestar is the basic fee for comparable legal services in the community." *Ketchum v.*

3    *Moses* (2001) 24 Cal. 4th 1122, 1132.

4        "[A] trial court has discretion to award an hourly rate under the lodestar method that

5    exceeds the rate that was actually incurred or paid." *Pasternack v. McCullough* (2021) 65 Cal.

6    App. 5th 1050, 1058. The Laffey Matrix is a fee schedule used by California courts for

7    determining the reasonable hourly rates of attorneys and paralegals. *See, e.g., id.* at 1057 n.5

8    (describing Laffey Matrix as "a United States Department of Justice billing matrix that provides

9    billing rates for attorneys at various experience levels in the Washington, D.C., area and can be

10    adjusted to establish comparable billing rates in other areas"); *Syers Properties III, Inc. v. Rankin*

11    (2014) 226 Cal. App. 4th 691, 695 (applying Laffey Matrix to San Francisco Bay Area).

12        The current Laffey Matrix provides the reasonable hourly rates of attorneys and paralegals

13    in the District of Columbia in accordance with the following schedule:

| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|------|------|------|------|------|------|------|------|
|  |  |  | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/24- 5/31/25 | 1.080182 | $258 | $473 | $581 | $839 | $948 | $1141 |
| 6/01/23- 5/31/24 | 1.059295 | $239 | $437 | $538 | $777 | $878 | $1057 |

19    **D.    The hourly rates are reasonable.**

20        Here, the market hourly rates of Wolverine's attorneys and paralegals comport with the

21    Laffey Matrix. Manasserian Law, APC, ("MLAPC") Wolverine's counsel of record, came into

22    this case in January 2024. During the relevant time period, attorney Armen Manasserian was

23    thirteen years out of law school, with extensive experience in post-judgment litigation. (AM

24    Decl., ¶ 82.) Thus, his rate of $900/hour comports with the Laffey Matrix. (*Id.*, ¶¶ 85-87, Exh.

25    48.) Attorneys Arya Channaveeraiah and Oksana Manasserian were 1-3 years out of law school;

26    thus, their rates of $473/hour comport with the Laffey Matrix. (*See* AM Decl., Exh. 48; AC

27    Decl.; and Declaration of Oksana Manasserian ["OM Decl."].) The rates of paralegals Jennifer

28    Perez, Hala Skaf, and Maria Locke identically track the Laffey Matrix at $258/hour. (AM Decl.,

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS

¶¶ 89-90, Exh. 48.)  In total, Wolverine incurred a total of $588,198.02 in legal fees and

$38,028.10 in costs, totaling $626,226.12 for all the work done by MLAPC.  (*Id.*, ¶ 91.)

Wolverine also retained the Moskovitz Appellate Team for the many appeals that have

arisen from their enforcement efforts, including appeals from this Court, the SLO Court, and the

Bankruptcy Court.  (MM Decl., Exh. 1.)  Attorney Myron Moskovitz is a former appellate justice;

he has 60 years of experience, including work on over 100 appeals and writs, over 40 years of

teaching and lecturing experience at universities around the world, and as the author or co-author

of dozens of publications.  (*Id.*, ¶¶ 3-5, Exh. 1.)  He also served as a clerk to a justice of the

California Supreme Court.  (*Id.*)  Given his extensive and specialized experience, his rate of

$1,500/hour, slightly above the Laffey Matrix rate for attorneys with over 20 years of experience,

is reasonable.  (*Id.*, ¶ 7, Exh. 2.)  Moskovitz's colleague, attorney Jason Marks, is 38 years out of

law school, with 25 years of experience as a law clerk, research attorney, and Head of Chambers

for justices of the California Supreme Court.  (JM Decl., ¶¶ 3-4.)  Thus, his rate of $950/hour

comports with the Laffey Matrix.  (*Id.* ¶ 5, Exh. 1.)  The rates of paralegal Annie Hsia and the

other paralegals and law clerks on the Moskovitz Appellate Team identically track the Laffey

Matrix at $258/hour.  (MM Decl., ¶¶ 10-11, 17-18, Exh. 2.)  Additionally, Moskovitz incurred a

total of $1,038.44 in costs and expenses representing Wolverine in its efforts to enforce its

judgment against the Kings.  (*Id.*, ¶ 19.)  In total, Wolverine is entitled to recover $174,715.94 for

all the work done by Moskovitz Appellate Team.  (*Id.*, ¶ 20.)

In addition to MLAPC and Moskovitz Appellate Team, Wolverine sought counsel from

three bankruptcy specialists.  Attorney Brett Ramsaur of Ramsaur Law, P.C. ("Ramsaur Law")

has 16 years of experience focused on bankruptcy law and judgment enforcement.  (BR Decl., ¶

3.)  He began his career as a law clerk to a United States Bankruptcy Judge in Los Angeles.  (*Id.*,

¶ 4.)  During the applicable time period, Ramsaur billed Wolverine for time spent litigating the

involuntary bankruptcy petitions against John and Carole King under Chapter 7, including

involvement in Wolverine's appeals to the Bankruptcy Appellate Panel (BAP), in January and

June, 2024.  His rate of $878/hour comports with the Laffey Matrix for attorneys with 11 to 19

years of experience.  (*Id.*, Exh. 1.)  Mr. Ramsaur further instructed his associate attorney, Joshua

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS

1  Nyman, to complete tasks in the bankruptcy action. (*Id.*, ¶ 9, Exh. 1.) Mr. Nyman has 17 years of

2  experience, and his rate of $839/hour is reasonable because it comports with the Laffey Matrix.

3  (*Id.*) In total, Wolverine incurred a total of $34,150.50 in legal fees and $596.00 in costs and

4  expenses, totaling $34,746.50, for all the work done by Ramsaur Law. (*Id.*, ¶ 11.)

5      Attorney Casey Donoyan, who previously represented Wolverine, primarily participated

6  in the involuntary bankruptcy cases against the Kings under Chapter 7 and the related appeals.

7  (CD Decl., ¶¶ 1, 3.) Donoyan has 22 years of experience in bankruptcy law and business

8  litigation. (*Id.*, ¶ 23.) Thus, his rate of $1,141/hour comports with the Laffey Matrix. (*Id.*, ¶¶ 4-5,

9  Exh. 1.) In total, Wolverine incurred a total of $264,886.40 in legal fees and $3,203.28 in costs

10  and expenses, totaling $266,089.68, for all the work done by Donoyan. (*Id.*, ¶ 9.)

11      Attorney Todd Curry consulted in connection with the involuntary bankruptcy cases filed

12  against the Kings and the related appeals. (TC Decl., ¶5.) Curry is 35 years out of law school,

13  with extensive experience in bankruptcy and business litigation. (*Id.*, ¶ 4.) Thus, his rate of

14  $1,141/hour comports with the Laffey Matrix. (*Id.*, ¶¶ 6-7.) In total, Wolverine incurred a total

15  of $23,732.80 in legal fees for all the work done by Curry. (*Id.*, ¶ 10.)

16      Finally, Wolverine has incurred a grand total of $1,084,645.22 in legal fees and

17  $42,865.82 in costs and expenses, totaling $1,127,511.04. (AM Decl., ¶ 91; MM Decl., ¶ 20; BR

18  Decl., ¶ 11; CD Decl., ¶ 9; and TC Decl., ¶ 10.)

19      Notably, courts applying the Laffey Matrix have adjusted upwards the hourly rates of

20  attorneys and paralegals in California. See, e.g., *In re HPL Technologies, Inc. Securities*

21  *Litigation* 366 F. Supp. 2d 912, 922 (N.D.Cal. 2005) (applying "an approximately 9 percent

22  upward rate [in San Francisco] over rates [of the Laffey Matrix] in the District of Columbia").

23  However, Wolverine does not seek such an upward adjustment here. Thus, the hourly rates of

24  Wolverine's attorneys and paralegals are reasonable.

25  E.      **The expended hours are reasonable.**

26      "The policy of the law favors the enforcement of judgments" and "to leave no stone

27  unturned in the search for assets which might be used to satisfy the judgment." *Yolanda's, Inc. v.*

28  *Kahl & Goveia Commercial Real Estate* (2017) 11 Cal. App. 5th 509, 515, citing *Troy v. Superior*

---

20

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS

Dated: December 30, 2025

MANASSERIAN LAW, APC

By : /s/ Armen Manasserian
Armen Manasserian, Esq.
Attorneys for Assignee of Record,
Wolverine Endeavors VIII, LLC

22

NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS

Docusign Envelope ID: 3A7AB28B-02FB-4BBF-8C95-2CAFF46FA008

1   Armen Manasserian (SBN 288199)
    Scott O'Halloran (SBN 325432)
2   MANASSERIAN LAW, APC
3   35 Hugus Alley, Suite 210
    Pasadena, California 91103
4   Tel.: (626) 469-0500
    Fax: (626) 469-0510
5   Email: armen@ml-apc.com

6
    Attorneys for Assignee of Record,
7   Wolverine Endeavors VIII, LLC

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF SAN FRANCISCO

10

11  EAST WEST BANK, a California          Case No.: CGC-10-505989
    corporation,
12                                        DECLARATION OF K. TODD CURRY IN
13                  Plaintiff,            SUPPORT OF MOTION FOR
                                          ATTORNEY'S FEES AND COSTS
14          v.

15  John E. King, an individual; Carole D. King, an    Date:      February 18, 2026
16  individual,                          Time:      9:00 a.m.
                                         Dept.:     301
17                  Defendants.          Judge:     Hon. Christine Van Aken

18

19

20

21

22

23

24

25

26

27

28

                                     1

                    DECLARATION OF K. TODD CURRY

                    Exhibit C - Page 25

## DECLARATION OF K. TODD CURRY

I, K. Todd Curry, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California.  I am the principal attorney at Curry Advisors, a Professional Law Corporation, bankruptcy counsel for Judgment Creditor/Assignee of Record Wolverine Endeavors VIII, LLC ("Wolverine").

2.      Except where stated on information and belief, I have firsthand knowledge of the contents of this declaration, or have gained knowledge from the records of my law firm.  If called as a witness, I could and would competently testify hereto.

3.      I graduated in 1990, Magna Cum Laude, from the University of San Diego School of Law, where I was Executive Editor of the San Diego Law Review.  I was admitted to the State Bar of California in 1990 and to the State Bar of Nevada in 2000 (presently inactive). I have practiced law continuously in San Diego, California since 1990, *i.e.*, for approximately 35 years. I am peer review rated "AV Preeminent" by Martindale-Hubbell (martindale.com) and have been for more than 20 years.

4.      During the last 35 years, the majority of my practice has been in the Superior Courts of California and the federal District Courts and Bankruptcy Courts in California.  My practice has focused primarily, although not exclusively, on business litigation, business bankruptcy (representing creditors and debtors), bankruptcy litigation, and creditors' rights.

5.      The services my firm rendered to Wolverine were for consulting in connection with the involuntary bankruptcy cases filed against John King and Carole King.  The services related primarily to issues concerning a bankruptcy-related appeal by Wolverine, the scope and duration of the automatic stay, and attorney's fees issues relating to the bankruptcy cases.

6.      The hourly rate of $1,141 is reasonable in light of my education and experience, and in the context of the complexity of the post-judgment bankruptcy services I have rendered thus far.

7.      I believe my hourly rates are also reasonable in light of the Laffey Matrix, which is a widely-accepted fee schedule based on the District of Columbia region, and which is unadjusted for the higher cost of living within San Diego County.

Docusign Envelope ID: 3A7AB28B-02FB-4BBF-8C95-2CAFF46FA008

8.  I attach hereto a true and correct copy of the 2024 Laffey Matrix as **Exhibit 1**.

9.  From January 1, 2024 through March 31, 2025, I have spent a total of 20.8 hours of legal services in this action, resulting in a total lodestar-adjusted value of $23,732.80.

10.  Below is a chart summary of the monthly invoices with lodestar adjustments from January 2024 through March 2025 of time entries relating to the enforcement of this action as follows:

| Month | Invoice Amount | Lodestar Adjustment | Exhibit No. |
|---|---|---|---|
| January 2024 | $3,333.00 | $7,530.60 | **Exhibit 2** |
| February-July 2024 | $0.00 | $0.00 | N/A |
| August 2024 | $2,625.00 | $5,705.00 | **Exhibit 3** |
| November 2024 | $3,622.50 | $7,872.90 | **Exhibit 4** |
| December 2024 | $945.00 | $2,053.80 | **Exhibit 5** |
| January-February 2025 | $0.00 | $0.00 | N/A |
| March 2025 | $262.50 | $570.50 | **Exhibit 6** |
| **TOTAL:** | | **$23,732.80** | |

I declare under the penalty of perjury pursuant to the laws of the state of California that the foregoing is true and correct.

Executed on ___12/18/2025___, at San Diego, California

Signed by:

*K. Todd Curry*
—55DF37EAD7F144E...

K. Todd Curry

3

DECLARATION OF K. TODD CURRY

Exhibit C - Page 27

Docusign Envelope ID: 3A7AB28B-02FB-4BBF-8C95-2CAFF46FA008

# Exhibit 1

Exhibit C - Page 28

Docusign Envelope ID: 3A7AB28B-02FB-4BBF-8C95-2CAFF46FA008

# LAFFEY MATRIX

History

Case Law

See the Matrix

Contact us

Home

|  | | Years Out of Law School * | | | | | |
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20+ |
|---|---|---|---|---|---|---|---|
| 6/01/24- 5/31/25 | 1.080182 | $258 | $473 | $581 | $839 | $948 | $1141 |
| 6/01/23- 5/31/24 | 1.059295 | $239 | $437 | $538 | $777 | $878 | $1057 |
| 6/01/22- 5/31/23 | 1.085091 | $225 | $413 | $508 | $733 | $829 | $997 |
| 6/01/21- 5/31/22 | 1.006053 | $208 | $381 | $468 | $676 | $764 | $919 |
| 6/01/20- 5/31/21 | 1.015894 | $206 | $378 | $465 | $672 | $759 | $914 |
| 6/01/19- 5/31/20 | 1.0049 | $203 | $372 | $458 | $661 | $747 | $899 |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |

Exhibit C    Page 29                    Exhibit 1 - P. 1

Docusign Envelope ID: 3A7AB28B-02FB-4BBF-8C95-2CAFF46FA008

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/1/96–5/31/97 | | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95–5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94–5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g.,DL v. District of Columbia, 267 F.Supp.3d 55, 69 (D.D.C. 2017)

\* ï¿½Years Out of Law Schoolï¿½ is calculated from June 1 of each year, when most law students graduate. ï¿½1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). ï¿¼4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier ï¿½1-3" from June 1, 1996 until May 31, 1999, would move into tier ï¿¼4-7" on June 1, 1999, and tier ï¿½8-10" on June 1, 2003.

\*\* The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

Exhibit C - Page 30

Exhibit 1 - P. 2

1   Armen Manasserian (SBN 288199)
    Scott O'Halloran (SBN 325432)
2   **MANASSERIAN LAW, APC**
    35 Hugus Alley, Suite 210
3   Pasadena, California 91103
    Tel.: (626) 469-0500
4   Fax: (626) 469-0510
5   Email: armen@ml-apc.com

6

7   Attorneys for Assignee of Record,
    Wolverine Endeavors VIII, LLC

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9             **FOR THE COUNTY OF SAN FRANCISCO**

10

11  EAST WEST BANK, a California      Case No.: CGC-10-505989
    corporation,
12
                           **DECLARATION OF CASEY Z. DONOYAN**
13           Plaintiff,     **IN SUPPORT OF MOTION FOR**
                           **ATTORNEY'S FEES AND COSTS**
14   v.

15  John E. King, an individual; Carole D. King, an
    individual,                  Date:      February 18, 2026
16                           Time:     9:00 a.m.
             Defendants.     Dept.:    301
17                           Judge:   Hon. Christine Van Aken

18

19

20

21

22

23

24

25

26

27

28

                                      1

              **DECLARATION OF CASEY Z. DONOYAN**

Docusign Envelope ID: 3BDCCF36-07A3-407F-A665-6661D6C-22D42

## DECLARATION OF CASEY Z. DONOYAN

I, Casey Donoyan, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California.  I am currently a Principal at Offit Kurman, PC.  I represented Judgment Creditor/Assignee of Record Wolverine Endeavors VIII, LLC ("Wolverine") as their bankruptcy counsel when I was Of Counsel at Levison Arshonsky Kurtz & Komsky, LLP.

2.      Except where stated on information and belief, I have firsthand knowledge of the contents of this declaration, or have gained knowledge from the records of my law firm.  If called as a witness, I could and would competently testify hereto.

3.      I have 23 years of experience in bankruptcy law.  I graduated with a Juris Doctor from McGeorge School of Law, University of the Pacific in 2002.  Since graduating and being admitted to the State Bar of California, I have practiced in the Superior Courts of California, the Federal Districts of California, and the United States District Court of Appeals for the Ninth Circuit.

4.      The hourly rate of $1,141.00 is reasonable (1) in light of my education and experience, (2) compared to other attorneys of similar experience performing similar work in Los Angeles County, and (3) in the context of the complexity of the post-judgment bankruptcy services I have rendered thus far.

5.      My hourly rate is also reasonable in light of the Laffey Matrix, which is a widely-accepted fee schedule based on the District of Columbia region, and which is unadjusted for the higher cost of living within Los Angeles County.

6.      I attach hereto a true and correct copy of the 2024 Laffey Matrix as **Exhibit 1**.

7.      From January 1, 2024 through May 31, 2025, the time period in which Wolverine incurred these fees, I have incurred a total of 230.40 hours of legal services in this action, incurring a total of $262,886.40.

8.      Below is a chart summary of the monthly invoices with lodestar adjustments from January 2024 through May 2025 of time entries relating to the enforcement of this action as follows:

2

Docusign Envelope ID: 3BDCCF30-07A3-407F-A665-86B1D6C4D42

| Month | Invoice Amount | Lodestar Adjustment | Exhibit No. |
|-------|---------------|---------------------|-------------|
| January 2024 | $2,677.18 | $8,671.60 | Exhibit 2 |
| February 2024 | $0.00 | $0.00 | N/A |
| March 2024 | $420.00 | $1,369.20 | Exhibit 3 |
| April 2024 | $1,050.00 | $3,423.00 | Exhibit 4 |
| May 2024 | $12,390.00 | $40,391.40 | Exhibit 5 |
| June 2024 | $8,185.00 | $10,383.10 | Exhibit 6 |
| July 2024 | $7,175.00 | $23,390.50 | Exhibit 7 |
| August 2024 | $0.00 | $0.00 | N/A |
| September 2024 | $0.00 | $0.00 | N/A |
| October 2024 | $8,680.00 | $28,296.80 | Exhibit 8 |
| November 2024 | $8,820.00 | $28,753.20 | Exhibit 9 |
| December 2024 | $10,570.00 | $34,458.20 | Exhibit 10 |
| January 2025 | $5,810.00 | $18,940.60 | Exhibit 11 |
| February 2025 | $0.00 | $0.00 | N/A |
| March 2025 | $14,035.00 | $47,754.10 | Exhibit 12 |
| April 2025 | $3,290.00 | $10,725.40 | Exhibit 13 |
| May 2025 | $2,555.00 | $8,329.30 | Exhibit 14 |
| **TOTAL:** | | **$264,886.40** | |

9.      In total, Wolverine has incurred a total of $264,886.40 in legal fees and $3,203.28 in costs and expenses, totaling $268,089.68.

I declare under the penalty of perjury pursuant to the laws of the state of California that the foregoing is true and correct.

Executed on ___12/17/2025___, at Los Angeles, California

Signed by:

*Casey Donoyan*

D9E1C0F8910480...

Casey Donoyan

3

# EXHIBIT 1