BEALL & BURKHARDT, APC
WILLIAM C. BEALL, STATE BAR NO. 97100
ERIC W. BURKHARDT, STATE BAR NO. 132812
CARISSA N. HOROWITZ, STATE BAR NO. 274814
1114 STATE STREET
LA ARCADA BUILDING, SUITE 200
SANTA BARBARA, CALIFORNIA, 93101
(805) 966-6774, FAX (805) 963-5988

Counsel for Alleged Debtor

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>John E. King,<br><br>               Alleged Debtor. | ) Bk. No. 9:22-bk-10674-RC<br>) Chapter 7<br>)<br>) **ADDITIONAL REPLY RE RENEWED**<br>) **MOTION FOR DAMAGES PURSUANT**<br>) **TO 11 U.S.C. 303(i)** |

Date: January 27, 2026
Time: 1:00 p.m.
Place: 1415 State Street
       Courtroom 201
       Santa Barbara CA 93101

Dismissed Alleged Debtor John E. King hereby brings his Additional Reply in support of his renewed his request that the Court grant damages as authorized under 11 U.S.C. 303(i).

Although the primary reason to file is to respond to Docket Number 360 entitled "Wolverine Endeavors VIII, LLC's Supplemental Brief in Support of Opposition to Alleged Debtor's Renewed Motion for Damages" ('the Brief'), there are additional issues to be discussed as well.

1

## WOLVERINE'S BRIEF

Having nothing relevant to add, the Brief is an unsupported diatribe which states as loudly as possible (but without evidentiary support) that John King and all of his counsel are bad people. Before discussing what the Brief says, the Court needs to focus on what it does not say.

Wolverine Endeavors VIII, LLC ("Wolverine") has consistently misdescribed the proper standard for allowance of the most common damages granted under section 303(i), namely the fees and costs associated with defense of the dismissed involuntary petition. Wolverine seizes on a stray dictum in the case *Higgins v. Vortex Fishing Sys., Inc.* 379 F. 3d 701 (9th Cir. 2004). Since *Higgins* in fact affirmed an allowance of fees, any discussion of how such fees could have been disallowed is dicta. Furthermore, Wolverine always fails to acknowledge the comment by the Ninth Circuit in *Higins* itself. "Although we adopt the totality of the circumstances test as the appropriate standard under § 303(i)(1), we do not abandon the premise that "any petitioning creditor in an involuntary case ... should expect to pay the debtor's attorney's fees and costs if the petition is dismissed." *In re Kidwell*, 158 B.R. 203, 217 (Bankr.E.D.Cal.1993)". 379 F.3d at 707. Furthermore, in all the many rounds of briefing, Wolverine has not cited cases in which fees and costs were actually disallowed.

Wolverine makes no argument that the fees and costs incurred were not reasonable. In fact, the opposite is true, as is described below. Instead, Wolverine chooses to vilify counsel, without evidence to support its vilification. The Brief makes libelous accusations against John King, William Beall, and by reference Beall & Burkhardt, APC. Specifically, William Beall is accused of committing perjury no less than four times in the Brief, of conspiracy at least twice, and of witness tampering at least once (the "Beall Accusations"). None of the Beall Accusations is specific. Despite the multiple accusations of perjury, the Brief at no point describes a statement made under oath which it contends to be knowingly false. The same is true for the multiple accusations of perjury against John King.

Moreover, Wolverine's complaints about the behavior of John King and his counsel almost all relate to the Carole King case. Wolverine's desperation has it arguing that Beall & Burkhardt, APC did not

2

represent Carole King, as she was sufficiently compromised to prevent her from directing day to day decisions, despite the fact that the services were competent, there was no conflict, and the services benefitted Carole King. Wolverine then leaps into even deeper water, suggesting that because John King primarily directed the defense of both involuntary petitions, he was not entitled to representation in his case either.

The other allegations are allegations, essentially, of fraudulent transfers. There is no evidence of any such transfers. This case was filed in 2022, and Wolverine has been alleging fraudulent transfer without evidence for three and one-half years. In fact, the Court even invited evidence to be provided when it entered an Order to Show Cause for appointment of a Trustee in the summer of 2023. Wolverine argued that a refinance of a secured loan by an entity in which John and Carole King had a minority interest showed such a transfer! Needless to say, the Court denied relief.

The facts now are as the facts have always been. Wolverine purchased a junior lien position. For $1,000. It was out of the money, as the assets were insufficient to pay the senior liens. It knew it was out of the money, and on the petitions themselves it stated under oath that its position was wholly unsecured. Since then it has allegedly spent over $1.1 million trying to force the senior lienholders to cut it in to the money. The filing of the Rico suit in the District Court is more of the same. The dismissed debtor trusts the Court to be aware that no allegation in that complaint is evidence.

There is discussion in the Brief about failures to make discovery. None of those discussions relate to the John King case. Wolverine's carping is procedural only. It asked nearly identical questions of John King, and demanded nearly identical documents from him. In September of 2023, John King responded to multiple discovery requests, including responding to a document demand that had 255 separate requests. In the recent round (as will be more detailed below), Wolverine sent (many) more discovery demands and subpoenas. It was apparently satisfied with the results, as only one Motion to Compel was filed, and that has apparently been peaceably resolved.

3

The Court should also recall that, as has been proven previously, prior to any of the massive subpoena parade foisted by Wolverine, the Kings voluntarily produced evidence of their obligations, which are essentially the only documents that ever had any relevance to this case.

Furthermore Wolverine in its Brief only attacks actions of John King and his counsel. It makes no effort whatsoever to defend its own actions. Bad faith is about the conduct and purposes of the Petitioning Creditors, not the alleged Debtor(s). In particular, Wolverine has never in its many briefs, responded in any way or attempted to justify the single most important argument that the case was filed in bad faith. In the petitions themselves, Wolverine admitted under oath that it was out of the money. It knew from day one in these cases that senior liens were larger than the assets the Kings owned.

In addition, Wolverine has never provided any evidence, in fact really never tried to provide any evidence, of any avoidable transfer by the Kings which could have been pursued by the estate if the involuntary petitions had been granted.

Thus it knew from day one that it would never receive any distribution from an estate if the involuntary petitions had been granted. This is incontrovertible evidence that the involuntary petitions were filed for an improper purpose, which is bad faith. At no time in either case has Wolverine ever suggested any type of proper purpose for the filing of the petitions.

## BAD FAITH

Thus the Court is led to the issue of bad faith. Bad faith is determined as of the date the case is filed. However, Wolverine's post filing actions are evidence of its intent as of the filing date. And its actions make clear its intent. Its intent was to litigate in a scorched earth fashion until the Kings' family members was compelled to pay it off to go away.

That scorched earth litigation started at the beginning of the case and has continued unabated. The most recent round of pleadings show how Wolverine reacts to losing-by attacking. The Brief itself is a primer of Bad Faith. Wild unsupported accusations of multiple felonies, not only by John King but by his counsel, are the defining characteristic of the Brief. Not only are they libelous and unsupported, they are

4

also irrelevant, as they relate to testimony in the Carole King case, and have nothing to do with the competence or reasonableness of services. Those Wolverine has never challenged.

Meanwhile, Wolverine's abuse of the generous discovery rules continues unabated. In this last round, on September 22, Mr. Donoyan sent to counsel for Mr. King proposed subpoenas to approximately 48 entities. All were wildly overbroad. In fact, none of the entities subpoenaed knows or knew anything about Wolverine's bad faith. The undersigned attempted to meet and confer, but Mr. Donoyan hurriedly hung up on the first meet-and-confer all (to take another call) while it was still incomplete despite agreeing to at least some changes. Emails and phone calls to Mr. Donoyan were then met with the communication that he no longer worked at the firm, without a forwarding address. When Mr. Donoyan eventually emerged at a new firm, he twice failed to make a call that had been prearranged and served the subpoenas without even making the changes to which he had previously agreed.

Among the subpoenas were one to Mr. King, and one to Beall & Burkhardt, APC. Documents were produced by both parties. 26 categories of documents were demanded from Mr. King. Documents were demanded from Beall & Burkhardt, APC that obviously violated attorney-client privilege. In addition, the document demand required Beall & Burkhardt, APC to scan through thousands of emails related to this case to produce irrelevant "communications". In the Brief Wolverine complains that all documents it received had been received before. With the massive discovery demands done previously, both in this Court and in the Superior Court, it is no surprise that nothing new was received. Of course, Mr. King believes the Court should infer the intent to overlitigate from the constant demand for documents which have already been produced.

## ONGOING FEES

As time goes on, additional fees are incurred. The last request was in Docket 342, seeking $218,767.96 (after credits) for fees and costs through August 13, 2025. Attached to this pleading as Exhibit A are the Beall & Burkhardt, APC billings from August 14, 2025 through December 31, 2025. They total:

| Month | Fees | Costs | |
|---|---|---|---|
| August 14-31 | $1,365.00 | | |
| September | $2,925.00 | | |
| October | $7,605.00 | | |
| November | $4,550.00 | $19.44 | |
| December | $ 715.00 | | |
| Totals | $17,160 | $19.44 | $17,179.44 |

Thus the current request is $235,947.40. Of course, there will be a substantial bill for January, 2026, as well.

## WOLVERINE'S REQUEST TO THE SUPERIOR COURT

Wolverine has filed a Motion with the Superior Court seeking to increase its judgment by a whopping $1,127,511.04 for the fees and costs in pursuing the Kings since it purchased the judgment for $1,000 shortly before filing the involuntary cases. Lest Wolverine argue that this is apples-and-oranges with regard to the Kings claims for fees and costs in this case, the Superior Court requests fees from the following counsel, all of whom only represented Wolverine in these cases, except for Myron Moskowitz who represented Wolverine in appeals both in the Bankruptcy and Superior Court fora:

| Attorney | Hourly rate per Laffer Matrix | Total |
|---|---|---|
| K. Todd Curry | $1,141 | $23,732.80 |
| Myron Moskowitz | $1,500 | $174,715.94 |
| Brett Ramsaur | $839 | $34,150.50 |
| Casey Donoyan | $1141 | $266,089.68 |
| Total | | $498,688.92 |

6

Essentially, Wolverine seeks to add to its judgment approximately twice the fees sought by the Kings for the completely vain and objectively useless services of filing these cases. To put it bluntly, for losing.

Meanwhile, let's consider the factors, education and experience, in required by the Laffer index trumpeted by Wolverine in its fee request as setting reasonable fees.

| Attorney | Law School | Years in Practice | Hourly Rate |
|---|---|---|---|
| Curry | University of San Diego | 36 | $1141 |
| Moskowitz | Berkeley | 58 | $1500 |
| Ramsaur | Chapman | 17 | $839 |
| Donoyan | McGeorge | 22 | $1141 |
| Beall | Yale | 45 | $650 |

Clearly there is a disconnect here. Not even the graduates of the institution formerly known as Boalt Hall believe it is the equal of Yale, the preeminent law school in the nation. McGeorge, USD, and Chapman are all fine law schools, but pale in comparison. Beall's years in practice more than exceed the sum of Ramsaur's and Donoyan's, his principal adversaries in this case. Based upon the position taken by Wolverine before the Superior Court, the Court should grant an enhancement to the Beall & Burkhardt, APC fees of somewhere between 50% and 100%.

## CONCLUSION

Wolverine has no good faith defense to paying the costs and fees it forced upon the alleged Debtor in this involuntary case, and it is time for it to pay. Wolverine has never identified any good faith purpose for filing two involuntary cases from which it knew it would receive no dividend. The Court needs to find Wolverine in bad faith and issue an appropriate sanction.

Respectfully Submitted,

Dated: 1/8/26

By: *William C. Beall*
William C. Beall, Counsel for John E. King, dismissed Debtor

# DECLARATION OF WILLIAM C. BEALL

I, William C. Beall, declare and state as follows:

1. I am an attorney at law licensed in the State of California, duly admitted to practice in the Central District of California and in the above-entitled court and am a partner of the law firm of Beall & Burkhardt, APC, counsel for the alleged Debtors in this case. I am the designated professional responsible for overseeing the billing in this matter. I have personal knowledge of the facts set forth herein, and if called upon to do so, could and would competently testify to those facts.

2. Attached hereto as Exhibit A incorporated herein by this reference are billings sent by Beall & Burkhardt, APC to John King during the course of this case. These fees are separate from any fees and costs reflected in prior bills presented to the Court as part of the Carole King involuntary case, or any fees and costs previously supplied to the Court. Beall & Burkhardt, APC does not represent either John or Carole King with regard to any other matters. All fees were incurred in the defense of John's individual petition.

3. The bills submitted by Beall & Burkhardt for the time period from August of 2025 through December of 2025, essentially complies with the United States Trustee Guidelines A and B. I have reviewed Local Bankruptcy Rule 2016-1, and this application generally complies with that Rule. Although not subject to those rules, I represent debtors-in-possession and trustees in many cases and our billings generally reflect the specific demands of the Office of the United States Trustee.

4. Beall & Burkhardt has been paid for each of the services described in Exhibit A by John and/or Carole King.

5. Mr King has provided me with a Motion styled "Notice of Motion and Motion for Attorney's Fees and Costs" filed by Wolverine in the case East West Bank v. King, case No CGC-10-505989 in the Superior Court for the County of San Francisco. Filed with it were Declarations from (among others) Casey Z. Donoyan, K. Todd Curry, Myron Moskowitz, and Brett H. Ramsaur. Edited portions of each of those documents are attached hereto as Exhibits B, C, D, E and F.

6. On September 22, Mr. Donoyan sent me proposed subpoenas to approximately 48 entities. All were wildly overbroad. I would argue that all documents demanded were completely irrelevant. None

of the entities subpoenaed (except perhaps Mr. King and me) knows or knew anything about Wolverine's bad faith. I attempted to meet and confer, but Mr. Donoyan hurriedly hung up on the first meet-and-confer all (to take another call) while it was still incomplete despite agreeing to at least some changes. Emails and phone calls to Mr. Donoyan were then met with the communication that he no longer worked at the firm, without a forwarding address. When Mr. Donoyan eventually emerged at a new firm, he twice failed to make a call that had been prearranged and served the subpoenas without even making the changes to which he had previously agreed.

7.  Among the subpoenas were one to Mr. King, and one to Beall & Burkhardt, APC. Documents were produced by both parties. 26 categories of documents were demanded from Mr. King. Documents were demanded from Beall & Burkhardt, APC that obviously violated attorney-client privilege. In addition, the document demand required Beall & Burkhardt, APC to scan through thousands of emails related to this case to produce irrelevant "communications".

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1/8, 2026

_William C. Beall_
William C. Beall