1  CASEY Z. DONOYAN, SBN 224945
    *casey.donoyan@offitkurman.com*
2  OFFIT KURMAN, PC
   445 S. Figueroa Street, 18th Floor
3  Los Angeles, California 90071
   Telephone: 213.629.5700
4  Facsimile: 213.624.9441

5  Attorneys for Petitioning Creditor
   Wolverine Endeavors VIII, LLC
6

7

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

11  In re                                  Case No. 9:22-BK-10674-RC
                                            Chapter 7
12  JOHN E. KING,
                                            **OBJECTION TO PRE-TRIAL ORDER**
13          Alleged Debtor.                 **LODGED ON FEBRUARY 26, 2026 [DOC.**
                                            **NO. 388]; DECLARATION OF CASEY Z.**
14                                          **DONOYAN**

15                                          Evidentiary Hearing:

16                                          Date:      April 15, 2026
                                            Time:      9:00 a.m.
17                                          Loc.:      Courtroom 201
                                                       1415 State Street
18                                                     Santa Barbara, CA 93101

19

20

21

22

23

24

25

26

27

28

Offit|Kurman

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Petitioning Creditor, Wolverine Endeavors VIII, LLC ("Wolverine") hereby submits its Objection to the Pretrial Order lodged by Alleged Debtor John E. King ("King") on February 26, 2026 (the "Pretrial Order"). This herein objection is made pursuant to Local Bankruptcy Rules 9021-1, *et seq.* on grounds that the Pretrial Order was prematurely lodged by King prior to receiving information from Wolverine regarding its witnesses and exhibits. As discussed in greater detail below, at the Pre-Trial Hearing on February 19, 2026 the Court did not set a deadline of 5:00 p.m. for Wolverine to provide King with its list of witnesses and exhibits, thus the Pretrial Order should not have been submitted as it was not in compliance with the Court's direction.

**I.    STATEMENT OF RELEVANT FACTS**

On February 19, 2026, the Court conducted a Pre-Trial Conference (the "Pre-Trial"). Casey Donoyan, counsel for Wolverine, William C. Beall, counsel for King and Lior Katz, counsel for Fence Factory ("Fence Factory") all appeared at the Pre-Trial. During the Pre-Trial, the Court reviewed and discussed King's Unilateral Pre-Trial Stipulation (the "Pre-Trial Stip") [Doc. No. 370], the contents therein including, but not limited to, the facts to be admitted, facts in dispute, the issues of law that remained to be litigated, exhibits and witnesses.

After a lengthy discussion, the Court ruled that Wolverine and Fence Factory would be allowed to augment the Pre-Trial Stip/Order to identify their exhibits and their witnesses. Mr. Donoyan advised the Court that he was likely to call six witnesses and that Wolverine absolutely had exhibits it wanted to include. The Court thereafter ordered Mr. Beall to prepare "some sort of order form" and send it to Mr. Katz and Mr. Donoyan so that they may include their exhibits and witnesses in the Pre-Trial Stip/Order us to include my four additional witnesses and disclose "the exhibits that they intend on using that aren't included in the pretrial stip."

The Court then set the evidentiary hearing on the Renewed Motion for Damages (the "Evidentiary Hearing") for on April 15, 2026 at 9:00 a.m. A few moments later, Mr. Beall inquired about whether the Court wanted him to prepare a new stipulation or prepare an order for people to object to. In response, the Court ordered Mr. Beall to send Mr. Katz and Mr. Donoyan the Pre-Trial

Stip so that they may add their witnesses and exhibits. Specifically, the Court ordered:

> "Well, I would send it out to both Mr. Donoyan and Mr. Katz. Give them - - *there's no big rush on this, right? So give them a few days to review it. Why don't we say, you know, you give them until -- let's say, yeah, you give them until the 26th of February. I'll even write in in my notes. Give them until the 26th because there are things that they need to add into the order.*" [Emphasis Added].

Additionally, the Court stated:

> "*And so let's give them until the 26th. If they've got an issue that you all can't resolve, then we'll just do the disputed order process under the Local Rules. I'll ensure that I wait the seven days and if I don't have them signing off on the order, I'll wait the seven days, I'll get their disputed orders. If I need to hold a hearing, I will. If not, then I'll enter an order as I see fit.* We'll -- just like we -- like we always do the order for the trials." [Emphasis Added].

Prior to the conclusion of the Pre-Trial, the Court made no further orders in the above-captioned case and did not request that any party's counsel prepare and lodge a scheduling order.

On February 19, 2026, Mr. Beall filed a Notice of Lodgment of Order ("Notice of Lodgment No. 1") [Docket No. 381] wherein he attached a scheduling order purporting to memorialize the rulings made by the Court at the Pre-Trial earlier that day (the "Scheduling Order"). Unfortunately, the Scheduling Order did not comply with the Court's rulings and orders made during the Pre-Trial. Specifically, not only was Mr. Beall not asked to prepared a Scheduling Order, but the Scheduling Order prepared by *Mr. Beall included a deadline of 9:00 a.m. on February 23, 2026 for him to prepare and circulate an amended Pre-Trial Stip and a 5:00 p.m. deadline on February 26, 2026 for Wolverine and Fence Factory to add their witnesses and exhibits to the Pre-Trial Stip, neither of which this Court ever discussed or ordered at the Pre-Trial.*

On February 20, 2026, the day after the Scheduling Order was lodged, the Court entered the Scheduling Order [Doc. No. 382]. Given that the Court never ordered a 5:00 p.m. deadline on the

Offit | Kurman

1   26th, it is unclear why Mr. Beall included said deadline and whether the Court intended to adopt Mr.

2   Beall's changes, notwithstanding the lack of a discussion at the Pre-Trial.

3   On February 21, 2026 (a Saturday), Mr. Beall circulated a document entitled Proposed

4   Unilateral Pretrial Statement, via email, and requesting that Mr. Latz and Mr. Donoyan provide him

5   with witness lists and exhibit lists for him to add. At 5:07 p.m. on February 26, 2026, Mr. Beall filed

6   a Declaration re Compliance and Noncompliance with Scheduling Order (the "Beall Dec.") [Doc.

7   387], wherein Mr. Beall states that neither Wolverine or Fence Factory complied with unilateral

8   5:00 p.m. deadline in the Scheduling Order. Four minutes later, at 5:11 p.m. on February 26, 2026,

9   Mr. Beall filed a Notice of Lodgment of a Pretrial Order which did not include any exhibits or

10  witnesses of Fence Factory or Wolverine ("Notice of Lodgment No. 2") [Doc. No. 388].

11  Within 30 minutes of receiving the Beall Dec. and the Notice of Lodgment 2, Mr. Donoyan

12  telephoned Mr. Beall. He did not answer so Mr. Donoyan proceed to leave him a voicemail.

13  Additionally, Mr. Donoyan sent Mr. Beall an email stating that I was unaware of a 5:00 p.m.

14  deadline and asked if he would be willing to allow me to provide him with the names of the witnesses

15  we discussed at the Pre-Trial and our exhibits.

16  Prior to midnight on February 26, 2026, Mr. Donoyan prepared and filed a Declaration re

17  Pre-Trial Order explaining the situation, providing a list of witnesses and a list of exhibits (the

18  "Donoyan Dec.") [Doc. No. 389]. On February 27, 2026, Mr. Donoyan called and emailed Mr. Beall

19  again to request that Mr. Beall agree to submit a revised Pre-Trial Stip to include Wolverine's

20  exhibits and witnesses. To date, Mr. Beall has not returned Mr. Donoyan's call or responded to Mr.

21  Donoyan's emails. Seeing no other alternative, in accordance with Local Rule 9021-1(b)(3)(B) at

22  or around 11:00 a.m. on February 27, 2026, Mr. Donoyan contacted the Chambers of the Hon.

23  Ronald A. Clifford and left a voicemail message indicating the Wolverine objected to the Pre-Trial

24  Order lodged on February 26, 2026 and that a formal objection would be filed.

25  **II.    LEGAL STANDARD**

26  Local Rule 9021-1, *et seq.* sets forth the process for preparing, lodging and signing of

27  proposed orders. To the extent there is a dispute as to the contents of a proposed order, Local Rule

28  9021-1(b)(3)(B) sets forth the procedure for objecting. Specifically, Local Rule 9021-1(b)(3)(B)

1   states:

2       Separate Objection to Proposed Order. If an objection to the form of a
3       lodged order is to be filed, the opposing party must immediately (within 2
        court days) upon receipt of the form of the proposed order contact the
4       judge's clerk in chambers of the judge presiding in the matter by telephone,
        unless the judge's procedure indicates otherwise, to notify the presiding
5       judge that an opposition will be filed. A voicemail detailing the matter,
        calendar number and date of the hearing, and the nature of the opposition,
6       left with the judge's clerk may suffice as compliance with this duty.
        Opposing counsel must, within 7 days after service of a copy of a proposed
7       order prepared under this rule, file and serve a written objection to the form
        of the order, setting forth the grounds therefor. Opposing counsel must
8       attach as exhibits to the objection (i) a copy of the order that is the subject
        of the objection and (ii) a copy of the proposed alternative form of order.
9       The proposed alternative form of order so labeled must be lodged with the
        objection. A judge's copy of the objection and proposed alternative form of
10      order must be served on the judge in chambers in accordance with LBR
        5005-2(d). The failure to immediately sign (within 2 court days) when
11      offered the form of proposed order indicating that an objection will be filed,
        or failure to timely notify chambers that an objection will be forthcoming,
12      or failure to file and serve a timely objection as required by this rule may,
        in the court's discretion, constitute a waiver of any defects in the form of
13      the order.

14      As set forth above, Wolverine objects to the form of the Pre-Trial Order on the grounds that

15  it did not include Wolverine's witnesses and exhibits. At the Pre-Trial, the Court never ordered

16  Wolverine or Fence Factory to provide their list of witnesses or exhibits at or before a certain time.

17  Moreover, the Court recognized that since the Evidentiary Hearing is not until April 15, 2026,

18  stating: ***"there's no big rush on this, right? So give them a few days to review it. Why don't we***

19  ***say, you know, you give them until -- let's say, yeah, you give them until the 26th of February.***

20  ***I'll even write in in my notes. Give them until the 26th because there are things that they need to***

21  ***add into the order."*** Moreover, the Court never set a deadline of when the Pre-Trial Stip/Pre-Trial

22  Order was to be filed. Thus, not only was Mr. Beall's unilateral decision to include a 5:00 p.m.

23  deadline on February 26, 2026 not what the Court had ordered, but there was no specific deadline

24  the Court ordered for the filing of the Pre-Trial Stip/Pre-Trial Order. In other words, there was no

25  rush to lodge the Pre-Trial Order.

26      Given that the Court never discussed or ordered Wolverine or Fence Factory to provide Mr.

27  Beall their witness list or exhibit list by a specific time on the 26th, and did not set a specific deadline

28  for the Pre-Trial Order to be filed, Wolverine objects to the Pre-Trial Order to the extent it

5

1    impermissibly excludes Wolverine's witnesses and exhibits[1].

2    **III.    CONCLUSION**

3        For the reasons set forth above, Wolverine respectfully requests that the Court incorporate

4    its witness list and exhibit list, as set forth more specifically in Proposed Pre-Trial Order attached

5    as Exhibit "C" to the concurrently filed Declaration of Casey Z. Donoyan.

6    DATED:  February 27, 2026       OFFIT KURMAN, PC

7

8           By: _____

9           CASEY Z. DONOYAN
            Attorneys for Wolverine Endeavors VIII, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    _____

26    [1] Although the scope of this herein Objection relates solely to the exclusion of Wolverine's witnesses
     and exhibits, Wolverine intends on filing a Motion for Reconsideration and/or Motion for Relief

27    from the Court's oral order made at the Pre-Trial wherein Wolverine was sanctioned under Local
     Rule 7016-1(f)(2) and not permitted to include certain disputed facts and issues of law in the Pre-

28    Trial Stipulation and Order.

6

1                                 **<u>DECLARATION OF CASEY Z. DONOYAN</u>**

2         I, Casey Z. Donoyan, declare as follows:

3             1.        I am an attorney at law duly licensed to practice law in the State of California.  I am

4 a Principal with the law firm of Offit Kurman PC, counsel for Wolverine Endeavors VIII, LLC, one

5 of the petitioning creditors herein ("Wolverine"). I have full knowledge of the following facts and,

6 if called upon, I could and would competently testify thereto, except as to the matters stated on

7 information and belief and as to those matters, I believe them to be true.

8             2.        I attended the Pre-Trial Hearing on February 19, 2026 (the "Pre-Trial"). Also

9 attending the Pre-Trial was William Beall, counsel for the alleged debtor, John E. King ("King")

10 and Lior Katz, counsel for petitioning creditors, Fence Factory ("Fence Factory"). A true and correct

11 copy of the transcript from the Pre-Trial (the "Transcript") is attached hereto as Exhibit "A" and

12 incorporated herein by this reference.

13             3.        During the Pre-Trial, the Court reviewed and discussed King's Unilateral Pre-Trial

14 Stipulation (the "Pre-Trial Stip") [Doc. No. 370], the contents therein including, but not limited to,

15 the facts to be admitted, facts in dispute, the issues of law that remained to be litigated, exhibits and

16 witnesses.

17             4.        After a lengthy discussion, the Court ruled that Wolverine and Fence Factory would

18 be allowed to augment the Pre-Trial Order to identify their exhibits. (See Transcript, Ex. A, page

19 26, lines 20-22).

20             5.        Additionally, the Court inquired as whether there would be any other witnesses the

21 need to be included other than those identified in the Pre-Trial Stip. (See Transcript, Ex. A, page 27,

22 lines 7-8).

23             6.        I responded to the Court's inquiry about witnesses by advising the Court that

24 Wolverine intended on calling six witnesses, four of which were not identified on the Pre-Trial Stip,

25 including John G. King, Jr., Charles Chrietzberg from Monterrey County Bank, Mimi Lyons and

26 Carole King. (See Transcript, Ex. A, page 27, line 9 through page 28, line 15).

27             7.        The Court then directed Mr. Beall to "some sort of order form" and send it to Mr.

28 Katz and I for us to include my four additional witnesses and disclose "the exhibits that they intend

Offit|Kurman

1  on using that aren't included in the pretrial stip." (See Transcript, Ex. A, page 28, line 20 through

2  page 29, line 1).

3       8.     The Court then set the evidentiary hearing on the Renewed Motion for Damages (the

4  "Evidentiary Hearing") for on April 15, 2026 at 9:00 a.m. and stated that at the conclusion of the

5  Evidentiary Hearing that: "we'll talk when we're done on the 15th. I'll go as late as is reasonable

6  given the Court staff, but if we need to pick it up on April 16 at the noon hour, I may be able to do

7  that. Let's see where we are. So I'll set the trial for April 15, 2026 beginning at 9:00 a.m. That's in

8  person, all counsel and witnesses."  (See Transcript, Ex. A, page 31 lines 11-25).

9       9.     A few moments later, Mr. Beall inquired about whether the Court wanted him "to do

10  a new stipulation and have everyone sign it or do you want me to take the Court's comments and

11  just turn them into an order that people can object to?" (See Transcript, Ex. A, page 34, lines 22-

12  25).

13       10.     Additionally, Mr. Beall asked: "Do you want me to provide that directly to the Court

14  or do you want me to circulate it as a stipulation?"  (See Transcript, Ex. A, page 35 lines 11-13).

15       11.     In response to Mr. Beall's inquiries, the Court ordered Mr. Beall to send Mr. Katz

16  and I the Pre-Trial Stip so that we may add our witnesses and exhibits. Specifically, the Court

17  ordered:

18            "Well, I would send it out to both Mr. Donoyan and Mr. Katz. Give them -

19            *- there's no big rush on this, right? So give them a few days to review it.*

20            *Why don't we say, you know, you give them until -- let's say, yeah, you*

21            *give them until the 26th of February. I'll even write in in my notes. Give*

22            *them until the 26th because there are things that they need to add into the*

23            *order.*" [Emphasis Added]. (See Transcript, Ex. A, page 35 lines 14-20).

24       12.     Additionally, the Court stated:

25            "*And so let's give them until the 26th. If they've got an issue that you all*

26            *can't resolve, then we'll just do the disputed order process under the Local*

27            *Rules. I'll ensure that I wait the seven days and if I don't have them*

28            *signing off on the order, I'll wait the seven days, I'll get their disputed*

1    ***orders. If I need to hold a hearing, I will. If not, then I'll enter an order***

2    ***as I see fit.*** We'll -- just like we -- like we always do the order for the trials."

3    [Emphasis Added]. (See Transcript, Ex. A, page 36 lines 1-8).

4    13.    Prior to the conclusion of the Pre-Trial, the Court made no further orders in the

5    above-captioned case and did not request that any party's counsel prepare and lodge a scheduling

6    order.

7    14.    On February 19, 2026, Mr. Beall filed a Notice of Lodgment of Order ("Notice of

8    Lodgment No. 1") [Docket No. 381] wherein he attached a scheduling order purporting to

9    memorialize the rulings made by the Court at the Pre-Trial earlier that day (the "Scheduling Order").

10    15.    Unfortunately, the Scheduling Order did not comply with the Court's rulings and

11    orders made during the Pre-Trial.

12    16.    Specifically, the Scheduling Order that Mr. Beall prepared, included a deadline of

13    9:00 a.m. on February 23, 2026 for him to prepare and circulate an amended Pre-Trial Stip and a

14    *5:00 p.m. deadline* on February 26, 2026 for Wolverine and Fence Factory to add their witnesses

15    and exhibits to the Pre-Trial Stip, neither of which this Court ever discussed or ordered at the Pre-

16    Trial.

17    17.    To be clear, although the Court did set the deadline for Mr. Katz and I to provide Mr.

18    Beall a list of witnesses and exhibits to be included in the Pre-Trial Stip, the Court never set a

19    specific time that exchange needed to occur.

20    18.    On February 20, 2026, the day after the Scheduling Order was lodged, the Court

21    entered the Scheduling Order [Doc. No. 382].

22    19.    On February 21, 2026 (a Saturday), Mr. Beall circulated a document entitled

23    Proposed Unilateral Pretrial Statement, via email, and requesting that Mr. Latz and I provide him

24    with witness lists and exhibit lists for him to add.

25    20.    At 5:07 p.m. on February 26, 2026, Mr. Beall filed a Declaration re Compliance and

26    Noncompliance with Scheduling Order (the "Beall Dec.") [Doc. 387], wherein Mr. Beall states that

27    neither Wolverine or Fence Factory complied with unilateral 5:00 p.m. deadline in the Scheduling

28    Order.

9

21.     Four minutes later, at 5:11 p.m. on February 26, 2026, Mr. Beall filed a Notice of Lodgment of a Pretrial Order which did not include any exhibits or witnesses of Fence Factory or Wolverine ("Notice of Lodgment No. 2") [Doc. No. 388].

22.     Within 30 minutes of receiving the Beall Dec. and the Notice of Lodgment 2, I telephoned Mr. Beall. He did not answer so I proceed to leave him a voicemail. Additionally, I sent Mr. Beall an email stating that I was unaware of a 5:00 p.m. deadline and asked if he would be willing to allow me to provide him with the names of the witnesses we discussed at the Pre-Trial and our exhibits.

23.     Prior to midnight on February 26, 2026, I prepared and filed a Declaration re Pre-Trial Order explaining the situation, providing a list of witnesses and a list of exhibits (the "Donoyan Dec.") [Doc. No. 389].

24.     On February 27, 2026, I called and emailed Mr. Beall again to request that Mr. Beall agree to submit a revised Pre-Trial Stip to include Wolverine's exhibits and witnesses.

25.     To date, Mr. Beall has not returned any of my call's or responded to any of my emails.

26.     Seeing no other alternative, in accordance with Local Rule 9021-1(b)(3)(B), at or around 11:00 a.m. on February 27, 2026, I contacted the Chambers of the Hon. Ronald A. Clifford and left a voicemail message indicating the Wolverine objected to the Pre-Trial Order lodged on February 26, 2026 and that a formal objection would be filed.

27.     Pursuant to Local Rule 9021-1(b)(3)(B), attached hereto as Exhibit "B" is a true and correct copy of the Pre-Trial Order lodged on February 26, 2026 that is the subject of Wolverine's objection.

28.     Pursuant to Local Rule 9021-1(b)(3)(B), attached hereto as Exhibit "C" is a true and correct copy of the proposed alternative form of order.

29.     As set forth in footnote note to the Objection, although the scope of this herein Objection relates solely to the exclusion of Wolverine's witnesses and exhibits, Wolverine intends on filing a Motion for Reconsideration and/or Motion for Relief from the Court's oral order made at the Pre-Trial wherein Wolverine was sanctioned under Local Rule 7016-1(f)(2) and not permitted to include certain disputed facts and issues of law in the Pre-Trial Stipulation and Order.

30.    Specifically, the only disputed facts that Wolverine is going to ask this Court to include in the Pre-Trial Stipulation are the following:

    a.    John E. King mislead Wolverine prior to the filing of the involuntary bankruptcy case regarding his creditors and liabilities?

    b.    John E. King never had authority to act on Carole D. King's behalf.

    c.    Exhibit "C" attached to the Declaration of John E. King filed in support of his motion to dismiss was misleading and included creditors listed as his own that were not.

    c.    John E. King and/or his agents impeded Wolverine's attempts to obtain discovery prior to the evidentiary hearing on October 3, 2023.

    d.    John E. King has not been damaged as a result of the filing of this bankruptcy.

31.    Additionally, Wolverine is only going to ask this Court to include the following issues of law:

    a.    Was Wolverine justified in relying on John E. King's pre-petition testimony regarding his creditors and liabilities?

    b.    Is the conduct of John E. King sufficiently bad to warrant denial of his request for fees and damages under 11 U.S.C. § 303(i) as more particularly discussed in *Higgins v. Vortex Fishing Sys., Inc.,* 379 F.3d 701 (9th Cir. 2004)?

    c.    Should John E. King be entitled to recover any fees or damages that were incurred prior to the Bankruptcy Appellate Panel's decision to reverse the Order Granting his Motion to Dismiss?

    d.    How is the Court going to determine what portion of the attorneys' fees billed by Beall & Burkhardt are directly attributable to work done on John E. King's bankruptcy given that most of the invoices from Beall & Burkhardt did not distinguish between services rendered for John E. King or Carole D. King?

32.    Notwithstanding the limited nature of this herein Objection, Wolverine simply

1   wanted to alert the Court that by submitting the proposed alternative form of order, it is not waiving

2   its right to request this Court to reconsider its prior ruling to allow inclusion of the limited number

3   of disputed facts and issues of law set forth in paragraphs 30 and 31 above.

4        I declare under penalty and perjury under the laws of the United States that the foregoing is

5   true and correct.

6   Executed this 27th day of February 2026, at Los Angeles, CA.

7

8   _____

9   CASEY Z. DONOYAN

10   4924-6868-9042, v. 1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

1               UNITED STATES BANKRUPTCY COURT

2        CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

3                     --oOo--

4  In Re:               )  Case No. 9:22-bk-10674-RC
                        )
5  JOHN E. KING,        )  Chapter 7
                        )
6  Debtor,             )  Santa Barbara, California
                        )  Thursday, 9:00 A.M.
7  ------------------------------)  February 19, 2026
  In Re:               )
8                        )
  CAROLE D. KING,      )  Case No. 9:22-bk-10673-RC
9                        )
  Debtor,             )
10 ------------------------------)

11                     CONTINUED PRETRIAL HEARING
                        RE: [342] RENEWED MOTION FOR
12                     DAMAGES PURSUANT TO 11 U.S.C.
                        §303(i)
13

14                     CONTINUED EVIDENTIARY HEARING
                        RE: [170] MOTION FOR DAMAGES
15                     PURSUANT TO 11 U.S.C. 303(i)

16              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE RONALD A. CLIFFORD III
17          UNITED STATES BANKRUPTCY JUDGE

18

19  <u>APPEARANCES:</u>

20  For the Debtors:        WILLIAM C. BEALL, ESQ.
                      Beall and Burkhardt, APC
21                     1114 State Street
                     Suite #200
22                     Santa Barbara, California  93101

23

24
  Proceedings produced by electronic sound recording;
25 transcript produced by transcription service.



1   APPEARANCES (Continued):

2   For Wolverine Endeavors    CASEY DONOYAN, ESQ.
    VIII, LLC:                 Offit Kurman
3                              455 South Figueroa Street
                               18th Floor
4                              Los Angeles, California  90071

5   For Fence Factory,         LIOR KATZ, ESQ.
    Inc.:                      Katz Law
6                              5850 Canoga Avenue
                               Suite #400
7                              Woodland Hills, California 91367

8   Court Recorder:            Elizabeth Spann
                               U.S. Bankruptcy Court
9                              Central District of California
                               1415 State Street
10                             Santa Barbara, California 93101
                               (805) 884-4884
11
    Court Transcriptionist:    Ruth Ann Hager, C.E.T.**D-641
12                             Ben Hyatt Certified Deposition
                               Reporters
13                             17835 Ventura Boulevard
                               Suite #310
14                             Encino, California 91316

15

16

17

18

19

20

21

22

23

24

25

P 888.272.0022  F 818.343.7119        BENHYATT
                                      Certified Deposition Reporters        www.benhyatt.com

Page                                                                    3

1      SANTA BARBARA, CALIFORNIA, THURSDAY, FEBRUARY 19, 2026

2                          9:00 A.M.

3                          --oOo—

4           THE CLERK:  Please rise and come to order.  This

5    court is now in session, the Honorable Ronald Clifford

6    presiding.

7           THE COURT:  Okay.  Good morning, everyone.  This

8    is the February 19, 2026 calendar.  Why don't we start with

9    #1.00.  This is John King.  Mr. Donoyan.

10          MR. DONOYAN:  Good morning, Your Honor.  Casey

11   Donoyan appearing on #1.00 and #2.00 for Wolverine

12   Endeavors, Inc.

13          THE COURT:  Mr. Katz.

14          MR. KATZ:  Good morning, Your Honor.  Lior Katz

15   on behalf of Fence Factory, Inc.

16          THE COURT:  And Mr. Beall.

17          MR. BEALL:  Good morning, Your Honor.  William

18   Beall, Beall & Burkhardt on behalf of dismissed debtor in

19   both cases.

20                          (Pause)

21          THE COURT:  Okay.  We're on a pretrial hearing.

22   Let's see, Mr. Beall.

23          MR. BEALL:  Well, Your Honor, I think actually

24   you have to go first because Mr. Donoyan has disputed the

25   idea that at our last hearing you ordered us to produce a

Page                                                                      4

1  pretrial statement compliant with Rule 7016-1.  So the

2  first thing we need to hear is whether you indeed intended

3  us to do a pretrial stipulation and order consistent with

4  Bankruptcy Rule 7016-1.

5       THE COURT:  Okay.  Isn't that the rule?  Let's

6  see, Mr. Donoyan.

7       MR. DONOYAN:  Your Honor, I did submit a

8  declaration to that point yesterday.  I was unclear whether

9  or not we're supposed to -- whether or not Your Honor had

10  ordered a pretrial stipulation and order.  I went back and

11  looked.  There was no orders on the docket as to what we

12  were supposed to do.  The only notation was on the actual

13  docket entry, which said "pretrial statement."  There was

14  no reference to a stipulation.  There was no reference to,

15  you know, complying with Local Rules.  I went back and I

16  checked the docket and every other time in this case and in

17  Carole King's case that should order the parties to prepare

18  a pretrial stipulation and order, you specifically stated

19  that or there was an order on the docket that said pretrial

20  stipulation and order.

21       And so my understanding, at least the way I

22  interpret it and based on the reading that the use of the

23  word "statement" and in conjunction with the other

24  (inaudible) a minute entry and orders that are prior

25  entered in this case and in Carole King's case, that's not

Page                                                                    5

1   necessarily what Your Honor was ordering.

2          If I'm wrong and that -- you know, in my

3   interpretation and my understanding, then I apologize to

4   the Court.  And I repeatedly told Mr. Beall in my email

5   communications that if that is what you wanted and that is

6   what you intended, I have no problem participating in that.

7   But to the extent that that's not what you ordered, I

8   didn't want to engage in the onerous procedure of doing a

9   pretrial stipulation, admitting facts and disputing facts

10  and law and witnesses and exhibits, particularly in light

11  of the fact that we still don't even have a hearing date

12  yet, Your Honor.

13         THE COURT:  I'm looking at the -- this is Docket

14  #370, pages 25 through 35.  This is the -- this is

15  Mr. King's proposed unilateral pretrial statement.  And in

16  looking at facts one alpha through one gamma, those all

17  seem to be facts that don't require further proof.  I think

18  1(h) through (j) will.  I'm not -- I think those go towards

19  perhaps Mr. Beall's hourly rate being reasonable or not.

20  So we may need something on those facts, because I think

21  this is the first time I'm seeing those.

22         MR. BEALL:  Your Honor, they were in my last

23  pleading, the proof of each of those facts, and they've not

24  been disputed.  There's no -- there's no countervailing

25  argument.

Page                                                                    6

1             THE COURT:  Is really the crux of that just going

2    towards the reasonableness of the hourly rate?

3             MR. BEALL:  Well, not only that, Your Honor.  It

4    seems to me that if the petitioning creditors go to the

5    Superior Court and say they deserve to be paid at $1139 --

6    $1141, excuse me, an hour for their time in this case when

7    they are less experienced and less competent, to be fair,

8    then in fact, I ought to be compensated at the same rate,

9    and the Kings are entitled to an enhancement over the

10   hourly rates I billed them at.  So that's my argument.

11            That I put in as a disputed issue you see, Your

12   Honor, the question about whether I'm entitled to an

13   enhancement or whether the Kings are entitled to an

14   enhancement.  But, Your Honor, I don't think that it's fair

15   to the Court for the Court to sit here and do a pretrial

16   stipulation.  The bottom line is the Court ordered the

17   parties to do this and the Court has four choices.  They're

18   in the Local Rule.  There are two of them.  One of them we

19   can get a continuance.  That hurts my client and helps

20   Wolverine, so --

21            THE COURT:  Well, what --

22            MR. BEALL:  -- that doesn't make any sense.

23            THE COURT:  What -- we're going to do it now, so

24   one alpha through gamma, those are going to be admitted

25   facts.  Those don't require any more proof.

Page                                                                    7

1              (h) through (k), those are going to require some

2     proof.  I don't know that that's going to be critical at

3     the end of the day, but to the extent we're going to put

4     something on with those, we'll need proof of those.

5              (l), which is one lima, I think that one doesn't

6     require any further proof.  But some of these have some

7     language that I think is problematic and so, for instance,

8     one Mary, the -- I don't remember the apologizing for the

9     failure.  Maybe that happened, maybe that didn't.  I don't

10    remember the apologizing.  But it seems that to the extent

11    this was done that that's -- to the extent there was a

12    motion for leave filed, that's certainly something the

13    Court can take judicial notice of.  As a matter of fact,

14    quite frankly, I think some of these facts -- most of those

15    that I've highlighted as facts that are facts that we can

16    deem admitted were established at trial.  I think most of

17    these.

18             One Nancy through --

19             MR. DONOYAN:  Your Honor, may I object one

20    second?  I'm so sorry.  Did you say that (h) through (j)

21    were not admitted?  I apologize.  I'm just trying to take

22    copious notes, but I understand.

23             THE COURT:  I said (h) through (k).

24             MR. DONOYAN:  Okay.

25             THE COURT:  When I say "admitted," these are

Page                                                                    8

1   facts that require proof.

2          MR. DONOYAN:  That require proof.  Okay.

3          THE COURT:  (m), to the extent the debtor moved

4   to dismiss, that's -- that -- we can take judicial notice

5   of that, that Wolverine moved for leave to amend.  The

6   only -- the only portion of that statement I wasn't sure --

7   certain about was the apologizing for its failure to

8   reflect the purchase of the claim by Wolverine.  She may

9   have.  It's just that -- that was Ms. Bagdanov.  She may

10  have, in fact, apologized for that.  I don't remember and

11  I'm not sure it's mission critical at the end of the day to

12  the motion at bar.  So other than that portion of one Mary,

13  one (m), doesn't require further proof.

14         Let's sees.  One Nancy through omega doesn't

15  require further proof.  (p) and (q), I think that's what

16  the -- (p) is what this is all about, it seems to me.

17         MR. DONOYAN:  Yes, Your Honor.

18         THE COURT:  And (q).  (r) doesn't require further

19  proof.

20         MR. BEALL:  When you said (p) and (q) are what

21  this is all about, does that mean they're admitted or not

22  admitted?  They're clearly true.  There's no dispute about

23  these.

24         THE COURT:  Well, I don't know -- I'm assuming

25  that an ORAP lien was had with (q).  I don't know that.  I'm

Page                                                                9

1    just not certain.  I'm sure that -- I've seen that

2    somewhere.  I just don't remember that being the case.

3            So (p) and (q) I'm sure the parties probably

4    don't dispute those.  I simply don't remember those and I

5    don't have an agreement on those so I'm -- that sounds

6    something very easy to prove up to the extent we need to

7    get there.

8            I have my note on (s) is, did we not have that

9    proven at trial and if it wasn't, didn't we -- I feel as if

10   there's a record of Insurance Company of the West being

11   called by Wolverine to join and they specifically said

12   we're not joining unless we have certain number of people.

13   This went on for some period of time until they ultimately

14   joined, but I think I understand as to that --

15           MR. BEALL:  The emails are --

16           THE COURT:  -- and that's somewhere else in the

17   record.

18           MR. BEALL:  -- in the record.  I got them in

19   discovery and I've provided them with my declaration.  I

20   can't tell you right now which declaration because there

21   have been about eight of them, but it's -- they're in

22   there.

23           THE COURT:  Right.  (t), the only thing I circled

24   in there was open account.  I thought at the time that they

25   joined, Fence Factory, there was an open invoice which was

Page                                                                 10

1  paid post-petition, but prior to their joining.  The -- I

2  remember there was some discussion in the appellate

3  opinion.  I don't remember the appellate opinion well.  I

4  remember there was some discussion that there was some

5  ongoing relationship between King Ventures and Fence

6  Factory.  I don't remember that coming out at trial at all.

7  I don't know how that got in the BAP memo.  Maybe that was

8  something that was fleshed out at the -- on appeal.

9          The only fact I can recall was that there was an

10 invoice that was submitted and that invoice showed that

11 there was an amount owed of $40 prepetition.  And then it

12 was established that that was paid in full prior to Fence

13 Factory joining the involuntary petition.  So to the extent

14 there was an open account, that portion I would strike out

15 of 1(t) and simply say that the balance of that, I think,

16 is -- has been established.  I think I've written on that

17 and that's an established fact.

18         The only one I didn't understand was open

19 account.  That could be a fact that was there.  I just -- I

20 went back and looked quickly and I didn't find that

21 being -- I didn't find that being a fact.

22         (u) and (v) I'm sure these are right.  I don't --

23 I couldn't find those anywhere in the record, but I'm sure

24 they may be some -- it shouldn't be too hard to point the

25 Court to, if we get to this point.

Page                                                                 11

1              MR. BEALL:  As far as that's concerned, Your

2    Honor, (u) and (v) were suggestions by Mr. Katz, who

3    actually did cooperate in this statement that I have

4    admitted to.  So they're -- they can be admitted facts.  I

5    think they're things that the petitioning creditor -- at

6    least one of the petitioning creditors wanted and they're

7    true.

8              THE COURT:  Is there any issue on (u) and (v)

9    being facts that don't require further proof?

10             MR. KATZ:  No, Your Honor.  I think that was a

11   part of the pretrial stip for that initial trial that we

12   had back in '23.  So that's why I added them on here.  I

13   think the same pair got basically copy/pasted from that

14   pretrial stip.

15             THE COURT:  Fair enough.

16             MR. BEALL:  That might well -- I don't remember

17   that that way.

18             THE COURT:  Then (u) --

19             MR. BEALL:  Yeah.

20             THE COURT:  The (u) and (v) don't require further

21   proof.

22             (w) I think I'm fine with.  My memory on this was

23   Fence Factory was listed on the chart of the three buckets

24   of creditors as being one of King Ventures.  Am I wrong

25   about that?  I don't remember them being listed as a

Page                                                                12

1   creditor of King under John King.  It was under the

2   business entity, but what am I wrong about there?

3           MR. BEALL:  I think that's accurate.  They were

4   listed as a King Ventures creditor.

5           THE COURT:  Right.  So I think (w) is fine.  1(w)

6   is fine, except that when you say debtor listed Fence

7   Factory as a prepetition creditor, I think we should add a

8   line in there that says "of King Ventures."

9           MR. BEALL:  Okay.

10          THE COURT:  (x), was that during the trial or

11  during the Carole King testimony of Mr. Bennett?

12          MR. BEALL:  It was his deposition, Your Honor.

13  And this -- on this issue, I put that in there.  Mr. Katz

14  said, "Did he really say that?  I don't remember that."  I

15  sent him the page number and the citation to his deposition

16  and that's exactly what he said.  So I'll let Mr. Katz tell

17  you whether that's an admitted fact or not.

18          MR. KATZ:  Yes, Your Honor.  I mean, Mr. Beall

19  did provide me with testimony.  I did ask him for it.  You

20  know, it could be interpreted that way.  Steve Bennett

21  didn't say exactly what the sentence says, you know, word

22  by word, that he didn't investigate whether Fence Factory

23  held a claim.  You know, that's sort of a conclusion based

24  on his testimony, as opposed to him actually saying, "I

25  didn't even investigate whether Fence Factory held a

Page                                                                    13

1  claim." That's not exactly what he said.

2          MR. BEALL:  I'm happy to substitute his exact

3  words, Your Honor, if that's --

4          MR. KATZ:  Right.  Yeah.

5          MR. BEALL:  If that --

6          MR. KATZ:  Which is what I thought about doing.

7  If we can --

8          MR. BEALL:  Yeah.

9          MR. KATZ:  -- put in the exact words that he

10  said, you know, then at least --

11          MR. BEALL:  That's fine.

12          MR. KATZ:  -- it'd match it.

13          MR. BEALL:  I don't have any problem with that.

14          THE COURT:  Well, I'm going to make a note here.

15  I'm hoping this isn't some combative order -- combative

16  order, but I'm going to put on (x) that we'll revise (x),

17  1(x) to include the precise testimony of Mr. Bennett during

18  the deposition.

19          MR. BEALL:  Yeah.  That's fine.

20          THE COURT:  (y), (z) and (aa).  Those are all

21  facts that don't require further proof.  (bb), I'm not sure

22  so we may need something on that, so I'm sure that's

23  somewhere in the record.  I couldn't find it myself.

24          (cc).  I think where (cc) gets a bit wonky for me

25  is the use of the phrase "broad disclosure and mostly

Page                                                                          14

1  irrelevant."  I'm not saying that there wasn't 102

2  (indiscernible), but I think the "broad disclosure and

3  mostly irrelevant" are the issues that the Court would drop

4  by (cc).

5          Is there any issue with (cc) if we remove "broad

6  disclosure and the mostly irrelevant" issues?

7          MR. BEALL:  Well, I think we have to put in there

8  that the only issue at that point was who were creditors

9  and they sent subpoenas to more than twice as many people

10 as were listed as creditors.  That's the --

11         THE COURT:  Well --

12         MR. BEALL:  -- irrelevant issues part, Your

13 Honor.  I'll put that in if the Court wants instead.

14         MR. DONOYAN:  Well, Your Honor, if I may -- if I

15 may, Your Honor, they're not the only issue.  The issue was

16 whether they were paying their debts as they became due

17 because the motion to dismiss wasn't just about their

18 number of creditors.  It was about both components of 303.

19         THE COURT:  Well, on 1(cc), here's what doesn't

20 require further proof is that there were 102 subpoenas

21 issued in March -- in March of 2023 by Wolverine seeking

22 various issues about whether the involuntary case could

23 stand.  I think that covers --

24         MR. DONOYAN:  That's fine.

25         THE COURT:  -- the issues under 303.

Page                                                                    15

1              (dd), I'm assuming -- I don't remember this.  I'm

2   assuming that is fine with each other -- with everyone, so

3   unless I hear anything on (dd), that doesn't require

4   further proof.

5              MR. DONOYAN:  I'm not sure that that's even true,

6   Your Honor.  I don't know, so I can't comment as to whether

7   or not that's true or not.  I don't know why it's even

8   relevant, but as far as whether or not that's an admitted

9   fact or not, I don't know who they were served on.  I don't

10  have copies of the proofs of service in front of me.

11             MR. BEALL:  It seems to me --

12             THE COURT:  Okay.  Well --

13             MR. BEALL:  -- that Mr. Donoyan should know, Your

14  Honor, because this is the pretrial hearing.

15             MR. DONOYAN:  Your Honor, if we could have

16  Mr. Beall pipe down on the comments.  We're going through

17  our pretrial hearing.  He's now made three comments

18  disparaging me and I'd really appreciate it if he'd just

19  keep his comments to the pretrial statement.

20             THE COURT:  Okay.  Well, for (dd), to the extent

21  we need to prove that, that shouldn't be too difficult to

22  prove at trial.

23             (ee) and (ff), those don't require further proof.

24  I don't know about (gg) so that's going to require some

25  further proof.  (hh) doesn't require further proof.  (ii),

Page                                                                16

1   this is where we have to carve out some of the language.

2   It's -- here, the language is breathtaking.  I'm not saying

3   that that can't be proven, but (ii) doesn't require any

4   further proof outside of the description of the documents

5   being breathtaking.

6          I don't know if (jj) is admitted to.  Is there an

7   issue with (jj), Mr. Donoyan?

8          MR. DONOYAN:  I'm not really sure what that even

9   says, Your Honor.  I apologize.

10          "All communications not time limited between the

11      subpoena recipient and not only the alleged debtors

12      but also with 91 other entities was another common

13      demand."

14          THE COURT:  Okay.

15          MR. DONOYAN:  I mean --

16          THE COURT:  So --

17          MR. DONOYAN:  Don't even know why that's

18   relevant, but I don't know.  I don't have the subpoenas in

19   front of me right now.  I apologize, Your Honor, I don't.

20          THE COURT:  Okay.  (jj), that one will require

21   proof to the extent we need to discuss it at trial.  (kk)

22   is admitted without the need for further proof.  (ll), I

23   thought that was an issue that was at issue or am I wrong

24   about that?  I thought there was a dispute.

25          MR. BEALL:  No, they never sent me anything from

Page                                                                      17

1  that -- from those 155 subpoenas.  I didn't get one

2  document.

3          THE COURT:  Okay.  Is that -- is this one that's

4  admitted, Mr. Donoyan?

5          MR. DONOYAN:  Your Honor, I have to go back and

6  look and see.  I thought there was some document.  I also

7  remember that there wasn't very, if any, documents

8  produced, so I think I'd like to have an opportunity to

9  contest that because if there were some documents that --

10 if documents weren't produced, that statement is kind of

11 misleading.

12         THE COURT:  Okay.  (ll), that will require

13 further proof at trial.  (mm) is admitted without the need

14 to provide further evidence.  (nn), this is the third

15 sentence, the word "overbroad."  I think the rest of this

16 is fine.

17         MR. DONOYAN:  Okay.

18         THE COURT:  And maybe the last sentence.  Let's

19 see.

20         "The production date was after the date of

21     exchange of documents by the parties.  Wolverine would

22     never have been able to offer any document received."

23         I think that's true, but -- I mean, I can make

24 that conclusion on my own.  Why don't we say all of 1(nn)

25 absent -- and the second -- third sentence, the word "over

Page                                                              18

1  broad" and absent the fourth sentence.

2          MR. BEALL:  Can I leave there --

3          MR. DONOYAN:  Your Honor, if I may --

4          MR. BEALL:  Can I leave in -- can I leave in the

5  production date was after the date of exchange for

6  documents of the parties?  So I mean, the legal conclusion

7  is that, therefore, they couldn't have -- the Court might

8  not remember, but Wolverine actually made a motion to

9  continue the trial for this reason.  They sent out very,

10 very late discovery and then said, gosh, we can't do the

11 trial, Your Honor; we don't have answers yet.

12         So it's in the record for that reason, but I

13 can -- the production date -- well, I guess I can prove the

14 production -- well, maybe not because, again, I didn't ever

15 get served with these subpoenas, so I don't even have them.

16         THE COURT:  Okay.

17         MR. BEALL:  I -- I mean, I guess I --

18         MR. DONOYAN:  Your Honor, we're not

19 (indiscernible) that.  He got copies of the subpoenas.

20 That's 100 percent untrue.

21         THE COURT:  Well, I'm removing that fourth

22 sentence, so that --

23         MR. BEALL:  Okay.

24         THE COURT:  -- doesn't that resolve it?

25         MR. BEALL:  Okay.

BENHYATT
Certified Deposition Reporters

Page                                                        19

1           THE COURT:  Then I'm taking a broad issue, which

2   is an argument as to the breadth of the subpoenas.

3           MR. BEALL:  Fine.

4           THE COURT:  1(oo), that doesn't require further

5   proof.  That's an admitted fact.

6           1(pp), did Wolverine provide those, Mr. Donoyan.

7   I don't recall.

8           MR. DONOYAN:  We didn't get any documents.

9           THE COURT:  So no.  So 1(pp) is admitted.

10          MR. DONOYAN:  Oh, Your Honor, it's misleading in

11  the sense that 1(pp), which assumed that we received

12  documents and didn't produce any, so I think that to the

13  extent that there's a dispute as to whether or not

14  documents were received or not, I don't know that we can

15  admit (pp).

16          THE COURT:  1(qq), that's admitted and that does

17  require further evidence.  Same with 1(rr).  1(ss) through

18  (bbb), I have all of those as live issues for trial.  I'm

19  sure some of that somewhere around, but I don't recall much

20  or for some of this, any of this.

21          MR. BEALL:  Some of those have been -- were

22  admitted facts in even the rudimentary thing that

23  Mr. Donoyan sent back to me, Your Honor.  If you look at

24  page -- my docu -- the document you're looking at, Docket

25  #370, if you look at from --

Page                                                                    20

1              MR. DONOYAN:  Now using drafts, Your Honor?
2    We're not using drafts to determine whether something is
3    admitted or not?
4              MR. BEALL:  If you look at --
5              THE COURT:  Hold on --
6              MR. BEALL:  -- exhibit -- page 14 and 15, you'll
7    see that many of these issues were among the very, very few
8    issues that Mr. Donoyan didn't line out from my initial
9    draft.  I guess I can prove them all, but if that's what
10   the Court wants.
11             THE COURT:  It won't take us long to do.
12             MR. BEALL:  All right.
13             THE COURT:  1(ccc), that doesn't require further
14   proof and I have 1(ddd) and 1(hhh) as outstanding live
15   issues.  I think I remember 1(hhh).  I just don't -- unless
16   the parties are agreeing, I'd have to do a deep drive
17   through everything on the record and I just -- I don't --
18   just don't have the time.
19             MR. DONOYAN:  Your Honor, we'll stipulate to
20   (hhh).
21             THE COURT:  1(hhh) is admitted.  Anything else?
22   1(ddd) through 1(ggg) we can admit?
23             MR. DONOYAN:  I think the (bbb) is more a defense
24   factor, Your Honor.
25             MR. BEALL:  He asked I think --

Page                                                              21

 1          THE COURT:  Any issue with (d) through (g),

 2   Mr. Katz?

 3          MR. KATZ:  No, I think we agree with Will Beall

 4   that -- with Mr. Beall that (ddd) is an admitted fact.

 5          THE COURT:  (ddd) admitted.

 6          MR. BEALL:  That actually was Mr. Katz's

 7   suggestion, though I --

 8          MR. KATZ:  Right.

 9          MR. BEALL:  -- agree it's true.

10          MR. KATZ:  Yes.

11          THE COURT:  And (eee) through (ggg), is there

12   anything we need to do there other than admit them?

13          MR. DONOYAN:  As long as we're -- I mean, the

14   issue that I have with (eee) and (ggg), Your Honor, to the

15   extent this issue is, while we did receive responses I'm

16   not (inaudible) the responses -- that the replies were

17   necessarily responsive to the question.  So did they

18   provide responses by those dates?  Yes.  Were the responses

19   at least in our position responsive to the requests?  No,

20   so --

21          THE COURT:  Okay.  Then we'll -- (ccc), 1(ccc)

22   through 1(hhh), those are all admitted and don't require

23   further proof.

24          Sort of actually (indiscernible) simply leaving 2

25   there.  If we need to talk about things at the trial, we

P 888.272.0022  F 818.343.7119       BENHYATT   www.benhyatt.com
Certified Deposition Reporters

Page                                                                    22

1   can sort those things out.  I get there's perhaps a new

2   issue.  That's my word, a new issue on now looking for -- I

3   don't know how to describe it other than a bonus above and

4   beyond the invoices that have already been submitted based

5   on the hourly rate of your friend on the other side of the

6   aisle.  We can deal with that, rather than have you all

7   fight about that here.  I can deal with that when we get to

8   the trial.

9              I left (e) in there.  Again, I don't know that

10  2(e) was an issue at trial.  And I haven't had a reason to

11  go back in to look through this deeply and I remember that

12  was a part of the appellate opinion.  I don't ever recall

13  at trial -- and this may have happened -- Fence Factory

14  making this record of this being an ongoing expense that

15  the debtor was paying on -- the debtor -- that King

16  Ventures was paying on an ongoing matter so that even

17  though the invoice was paid post-petition, there's

18  essentially an executory contract that requires further

19  payments, almost as if there's a payment that tolls every

20  month that's due and payable.

21             So while the $44 or $45 was paid, there's still

22  this obligation, you know, kind of defining the word

23  "claim" very broadly.  There's still this outstanding

24  obligation.  I don't know where that came from.  I don't

25  remember hearing that, but it may be buried somewhere in

1   the record that I just -- it's been so long since we had

2   the trial.  I simply don't remember.

3          So I left 2(e) in, but I wanted the parties to

4   know that I don't remember that being a live fact, but I'm

5   cognizant that the BAP -- and I don't know if this was just

6   *dicta*.  I recall that the BAP made some sort of statement

7   that they believed that Fence Factory was a creditor

8   because of this ongoing relationship where there's an

9   amount that becomes due either at the time of the beginning

10  of the relationship or through some accrual of these

11  amounts every month.  I don't know where they got that.  It

12  may be somewhere in the record that I just wasn't paying

13  to -- paying attention to when I wrote the opinion, but I

14  left it in there in case it's something I simply didn't see

15  and I missed and everyone else did see and didn't miss.

16         And then, of course, I left 2(g) in.  Again, I --

17  I remember seeing the invoices and the amount of fees

18  requested.  2(g) is new to me based on my review of the

19  pretrial.  I'm looking at the -- Mr. King's pretrial

20  statement based on an hourly rate of Mr. Donoyan and -- I

21  can't remember the name of counsel who was originally in

22  the case who either --

23         MR. DONOYAN:  Mr. Rastner (phonetic).

24         THE COURT:  Mr. Rastner.

25         Again --

Page                                                                    24

1                MR. DONOYAN:  Your Honor --

2                THE COURT:  -- (indiscernible) isn't as important

3    to me.  I get there's some things that remain to be -- to

4    be litigated.  That wasn't as important to me as getting

5    the facts narrowed to try to narrow the testimony back and

6    forth on the facts.

7                And so while I'm not certain that all of 3 is a

8    live issue that we need to get into the weeds, I would be

9    comfortable simply leaving 3 in and when we get to trial I

10   can hear from folks as to their views on this.  I don't

11   think this is really -- this to me is more of a legal

12   issue, I suppose, than a -- some of these are more legal

13   issues than factual issues but, you know, bad faith is a

14   live issue that we're going to need to sort through.

15               MR. BEALL:  Well, Your Honor, 3 is supposed to be

16   the disputed legal issues.  And I had --

17               THE COURT:  Right.

18               MR. BEALL:  -- actually these statements in, in

19   my original draft as admitted since I have provided

20   authority for these propositions that has never been

21   contested.  We've been going around this circle for two

22   years, two and a half.  So -- but Mr. Katz said he didn't

23   think that they belonged and admitted, so I moved them to

24   disputed issues of law and I've left blanks for any

25   authority to the contrary and I've put in the citations to

Page                                                                    25

1   authority that I've previously provided to the Court.

2           So if there's anything to go the other way, you

3   know, that I think the petitioning creditors need to brief

4   that and say it, which has never happened, but I -- you

5   know, I guess there's no statute of limitations on making a

6   legal argument.

7           MR. DONOYAN:  Your Honor, I have a point of

8   clarification, if I may.  With respect to Section 2 where

9   it says, "The following facts -- following issues of fact

10  and no other items remain to be litigated," am I to

11  understand that we, meaning Wolverine, does not have the

12  ability to identify any facts that, you know, they think

13  may need to be litigated in light of the fact that we did

14  not participate in this agreement based on our

15  understanding of the Court's order?

16          THE COURT:  That's right.

17          MR. DONOYAN:  In other words --

18          THE COURT:  Today is our day to get this all

19  sorted out, so --

20          MR. DONOYAN:  We're not going to be -- we're not

21  going to have an opportunity to identify what issues of

22  fact or can I discuss that on the record with Your Honor

23  right now?

24          THE COURT:  Let's come back.  I need -- I've got

25  a big calendar behind me.  Let's get through 3.  3 are

Page                                                                      26

1   issues of law.  We just talked about that.  I'll let the --

2   I'm not sure what (a) is.

3          MR. BEALL:  Oh, so that -- Your Honor, and this

4   is something went wrong with the -- this is the -- there

5   should be a 4 in front of line 21, "Attached is a list of

6   exhibits."

7          THE COURT:  Okay.

8          MR. BEALL:  That should be 4 there, but the 4

9   didn't show up for some reason with my lack of skill at

10  Word and so this is the -- this is the exhibit list.  And I

11  have our exhibits listed on -- but, of course, now that the

12  Court has determined that there are more disputed facts,

13  I'm going to need to add exhibits because I'm going to need

14  exhibits to prove the things that are now at issue that had

15  not been previously at issue in this draft.  So there's

16  going to be --

17         THE COURT:  That --

18         MR. BEALL:  There's going to need to be some

19  additional exhibits.

20         THE COURT:  Then I'm also going to allow Fence

21  Factory and Wolverine to augment the order that allows them

22  to identify their exhibits.

23         MR. BEALL:  So -- okay.  I -- if that's the

24  Court's order, that's the Court's order.

25         THE COURT:  I'm assuming these are almost all the

Page                                                                27

1   same exhibits.  There may be a few here and there that

2   aren't the same, but I -- my understanding, if I remember

3   Carole King's, and this could -- this is going to have a

4   couple of different issues, but I think the exhibits are

5   largely -- there's going to be some cross-pollination use

6   of exhibits.

7           What about witnesses?  Are there any other

8   witnesses that we need other than those identified?

9           MR. DONOYAN:  Absolutely.

10          THE COURT:  I'm not -- I'm not asking about

11  impeachment exhibits or witnesses.

12          MR. DONOYAN:  Your Honor, this is Casey Donoyan.

13  For Fence Factory, yes, we intend on actually calling six

14  witnesses.

15          THE COURT:  Are they different than the witnesses

16  listed here?

17          MR. DONOYAN:  Well, John King and William Beall

18  are obviously on this list.  Okay.  We do intend on calling

19  John G. King, Jr.  We intend on calling -- I think his name

20  is Chrietzberg from Monterey County Bank.  We intend on

21  calling --

22          THE COURT:  What's his name?

23          MR. DONOYAN:  -- Katie Byans (phonetic).  I think

24  it's Bill or Chrietzberg.  I can't remember.  It's one that

25  Mr. King was communicating with and Mr. John King's agents

Page                                                                28

1  were communicating with, with respect to the subpoena as

2  part of the trial.

3            THE COURT:  Okay.

4            MR. DONOYAN:  Charles.  Charles Chrietzberg.  We

5  also intend on calling Mimi Lyons, who is an employee of

6  John G. or John E. King.

7            THE COURT:  Mimi, M-I-M-I?

8            MR. DONOYAN:  M-I-M-I Lyons.

9            THE COURT:  Okay.

10            MR. DONOYAN:  And potentially, Your Honor, I know

11  this is going to sound crazy, but potentially we're going

12  to call Carole King as well, Your Honor.

13            THE COURT:  Okay.  That's four.  And then the

14  other two are John E. King and Mr. Beall.

15            MR. DONOYAN:  Yes.

16            THE COURT:  And you don't have anyone that you

17  need to call, Mr. Katz, other than those folks listed by

18  Mr. King and his list of witnesses?

19            MR. KATZ:  That's correct, Your Honor.

20            THE COURT:  Okay.  Mr. King, can I burden you

21  with putting this into some sort of order form, getting

22  this to Mr. Katz and Mr. Donoyan?  The only thing I'm

23  looking from Mr. Donoyan that his -- in addition of these

24  four that Wolverine intends on calling as witnesses and any

25  disclosure of exhibits that they intend on using that

Page                                                                    29

1   aren't included in the pretrial stip, we're looking at page

2   370.  We then also talked about the addition of the actual

3   language used by Mr. Bennett at his deposition.  Okay.

4          I was going to set this for a half-day, but this

5   could go a full day.  I mean, the entire trial, to my

6   memory, was a -- I don't even remember that being a full

7   day but perhaps it was.  Should we come back in March or

8   should we come back in April?  I wanted to get this done as

9   soon as I could so I could begin to write it and get you

10  folks on your way.

11         MR. DONOYAN:  Your Honor, Casey Donoyan for

12  Wolverine.  We would like to come -- we don't think it's

13  going to be concluded in an entire day.  There's a lot of

14  information that was discovered after the case was

15  dismissed.  There's a lot of information that we've learned

16  that we'd like to maybe elicit from the witnesses.  We

17  think it's all relevant to the debtor's conduct.  And so I

18  don't think we can -- there's definitely no way we're going

19  to have one day.  So if you have two consecutive days,

20  great.

21         But also -- and I hate to beat a dead horse here,

22  so am I to understand that once this order gets entered,

23  Your Honor, we are bound by what's in here such that I am

24  not allowed to identify or have witnesses testify as to any

25  facts that are not identified in this in terms of what

Page                                                                        30

1   remain to be litigated?

2            THE COURT:  That's what the Local Rules says.

3            MR. DONOYAN:  So -- and again, I'm just -- I just

4   want clarification.  Where in the -- I'm just looking, Your

5   Honor, where is it in the record that it says that this is

6   what was required of us, Your Honor?  It says "statement."

7   And the only minute line on the docket it says "statement"

8   where it's every other time a pretrial stipulation was

9   ordered it says pretrial stipulation and identifies the

10  Local Rule.

11           So at this point, Your Honor, I don't think if --

12  it that's what Your Honor intended, it's not clear from

13  what's on the -- what's on Docket #369.  It's not clear

14  from that and so we're being -- now going to be denied the

15  ability to raise issues when the Court's order wasn't

16  clear.

17           Respectfully, words do matter and when it say

18  "statement," as opposed to -- which is not found anywhere

19  in the Bankruptcy Rules, I'm not understanding how and why

20  we would -- we would be prejudiced and prevented from

21  presenting facts or presenting, you know, other issues of

22  law based on what is a -- at least a fair minimum a good

23  faith misinterpretation of the Court's order considering

24  the word "stipulation" doesn't appear anywhere in any order

25  with respect to today's hearing.

Page                                                                          31

1           THE COURT:  Okay.  So Mr. Beall, should we do

2   March or April?

3           MR. BEALL:  The sooner the better for me.

4   Actually -- well, maybe April would be better.  I think

5   that we had some -- I -- some of the witnesses may have

6   issues with some of the March dates.  I got an email

7   yesterday, so maybe we'd better do April.  I'm sorry to --

8           MR. KATZ:  Yes, Your Honor, I also have a jury

9   trial in the middle of March, so if we could push it to

10  April, that would be great.

11          THE COURT:  Let's say, April 15 at -- beginning

12  at 9:00 a.m.  I don't have two days bookended.  What I

13  might be able to do, we'll have to do this on our feet.  I

14  might be able to pick up again on the 16th after the noon

15  hour if we think we need to spill in for some more time and

16  we want to -- you know, we've got witnesses in town from

17  out of town and we don't want to make this, you know, a

18  month in between of trial days.  I'll put April 15 in for

19  now beginning at 9:00 a.m. as our in-person evidentiary

20  hearing and, again, we'll talk when we're done on the 15th.

21  I'll go as late as is reasonable given the Court staff, but

22  if we need to pick it up on April 16 at the noon hour, I

23  may be able to do that.  Let's see where we are.  So I'll

24  set the trial for April 15, 2026 beginning at 9:00 a.m.

25  That's in person, all counsel and witnesses.

Page                                                                      32

1              Did we do the paper exhibits at the last trial or

2    did we do the electronic exhibits?  I don't remember.

3              MR. DONOYAN:  We had binders, Your Honor.

4              THE COURT:  We had binders.  Okay.  We can do

5    binders again this go-round.  Just as easy for me.  Why

6    don't we say, let's have the binders routed to chambers by

7    close of business on -- let's say, 4:00 p.m. on April 14,

8    2026.  You've all done this before, so you can file -- give

9    them over the counter downstairs and they'll route them up

10   to chambers, but that way we have this all set up for you

11   when we get here at 9:00 a.m. on the 15th.  I'll put

12   binders to be provided to chambers by 4:00 p.m. on April

13   14, 2026.

14             MR. BEALL:  And, Your Honor, you want those here

15   in Santa Barbara and not delivered to you in Orange County,

16   correct?

17             THE COURT:  Yes.

18             MR. BEALL:  Okay.

19             THE COURT:  Yes.  2026 at 4:00 p.m.  The binders,

20   again, I know we've been through this, but three copies of

21   the binders to chambers.  That will be one for me, one for

22   the law clerk and -- law clerks in the back, one for the

23   witness, and if you could each exchange your own binders,

24   so you'll have a total of five.  One for yourself, three

25   for the Court and then one for each other.

Page                                                                      33

1            MR. BEALL:  Be two of each other for me at least,

2    Your Honor, right?  I need to have one for both Mr. Katz

3    and Mr. Donoyan, right?

4            THE COURT:  Oh, that's a good point.  Yeah,

5    that's for all of you.  Yeah, that's two.  Forget

6    that's -- we got Fence Factory and Wolverine on the hook in

7    the 303(i) motion.

8            MR. BEALL:  Right.

9            THE COURT:  Okay.  What else do we need to talk

10   about on the pretrial for #1.00, Mister --

11           MR. DONOYAN:  Your Honor, I just want a -- I just

12   want a ruling.  I just want a ruling from you today to make

13   the record clear that what you ordered at the last hearing

14   that was handed back was no order and that it didn't say

15   pretrial stipulation, that what you intended was that the

16   parties prepare a pretrial stipulation pursuant to Local

17   Rules.  I just want the record to be clear because that's

18   not what was in the entry on the docket, so I just want

19   that to be clear that your ruling today is not was what you

20   had intended.

21           THE COURT:  Okay.

22           MR. DONOYAN:  I'd like Your Honor to address that

23   issue, please.

24           THE COURT:  Anything else we need to take up on

25   one, Mr. Beall?

Page                                                                34

1              MR. DONOYAN:  Your Honor, I'm asking for a ruling

2    on that issue.  I don't understand why we can't -- why you

3    can't make that determination.  You're denying my clients

4    the right to due process and you're not ruling as to

5    whether or not that's what you intended --

6              THE COURT:  Okay.

7              MR. DONOYAN:  -- notwithstanding the fact that --

8              THE COURT:  Okay.  That's enough.

9              MR. DONOYAN:  -- I (indiscernible) the document.

10             THE COURT:  That's enough!  I said that's enough!

11   You got it?  Unmute yourself.  Is there a second time going

12   through this?

13             MR. DONOYAN:  I just want to --

14             THE COURT:  Do you understand?

15             MR. DONOYAN:  What's that, Your Honor?

16             THE COURT:  I asked you a question.  Do you

17   understand me when I say that's enough?

18             MR. DONOYAN:  I understand that you don't want me

19   to talk anymore, yes.

20             THE COURT:  Okay.  I'll see you all on April 15

21   at 9:00 a.m.

22             MR. BEALL:  Your Honor, can I ask -- well, does

23   the Court want me to do a new stipulation and have everyone

24   sign it or do you want me to take the Court's comments and

25   just turn them into an order that people can object to?  I

Page                                                                    35

1  will serve it by notice of lodgment as is required, *i.e.* --

2          THE COURT:  That's right.

3          MR. BEALL:  Tell me what you'd like, Your Honor.

4          THE COURT:  You mean, on the pretrial?

5          MR. BEALL:  Yes.  The --

6          THE COURT:  Yes.

7          MR. BEALL:  -- changes you just made I'm going to

8  do a new draft of this document.  All those things you said

9  are disputed, I'm going to put them in as disputed facts.

10 I'm going to add witnesses and exhibits necessary to prove

11 them and then I'm going to provide that and -- do you want

12 me to provide that directly to the Court or do you want me

13 to circulate it as a stipulation?

14         THE COURT:  Well, I would send it out to both

15 Mr. Donoyan and Mr. Katz.  Give them -- there's no big rush

16 on this, right?  So give them a few days to review it.  Why

17 don't we say, you know, you give them until -- let's say,

18 yeah, you give them until the 26th of February.  I'll even

19 write in in my notes.  Give them until the 26th because

20 there are things that they need to add into the order.

21         MR. BEALL:  Right.

22         THE COURT:  So they've got to add in the issues

23 we talked about regarding witnesses and exhibits and we've

24 got some issues that at least Mr. Katz needs to look at

25 regarding some language of Mr. Bennett at the deposition.

Page                                                                          36

1   And so let's give them until the 26th.  If they've got an

2   issue that you all can't resolve, then we'll just do the

3   disputed order process under the Local Rules.  I'll ensure

4   that I wait the seven days and if I don't have them signing

5   off on the order, I'll wait the seven days, I'll get their

6   disputed orders.  If I need to hold a hearing, I will.  If

7   not, then I'll enter an order as I see fit.  We'll -- just

8   like we -- like we always do the order for the trials.

9           MR. BEALL:  Your Honor, the other thing I'd like

10  to raise is that the Federal Rules of Civil Procedure says

11  the Court must grant sanctions.  It doesn't say -- it's

12  more than "shall."  It's definitely not "may."  And --

13          THE COURT:  Okay.

14          MR. BEALL:  -- I -- I -- it's clear that there's

15  been complete non-compliance here by Wolverine and I think

16  the Court must grant sanctions.

17          THE COURT:  Okay.  That's the ruling on #1.00.

18  On #2.00 I'm going to trail that simply because we've --

19  that -- the record is closed on that.  We've finished that

20  when I think the -- my idea was to write these together, so

21  that that stays on the -- in front of the Court's mind.

22  I'll continue #2.00 to simply trail Carole King, even

23  though it's not a trial.  I'll continue it as -- I'll

24  continue it to April 15, 2026 at 9:00 a.m.

25          MR. DONOYAN:  And, Your Honor, is the issue of

Page                                                                      37

1   sanctions still up in the air or are we -- I'd like to know

2   whether or not I'm still subject to being sanctioned.

3          THE COURT:  Okay.  I'll see everyone back on

4   April 15.

5          MR. BEALL:  Thank you, Your Honor.

6          THE COURT:  Okay.

7   (End at 9:46 a.m.)

8                      * * * * * * *

9          I certify that the foregoing is a correct

10  transcript from the electronic sound recording of the

11  proceedings in the above-entitled matter.

12

13  *Ruth Ann Hager*

14  _____        Date:  2/24/2026

15  RUTH ANN HAGER, C.E.T.**D-641

16

17

18

19

20

21

22

23

24

25

EXHIBIT B

BEALL & BURKHARDT, APC
WILLIAM C. BEALL, STATE BAR NO. 97100
ERIC W. BURKHARDT, STATE BAR NO. 132812
CARISSA N. HOROWITZ, STATE BAR NO. 274814
1114 STATE STREET
LA ARCADA BUILDING, SUITE 200
SANTA BARBARA, CALIFORNIA, 93101
(805) 966-6774, FAX (805) 963-5988

Counsel for Alleged Debtor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re | ) Bk. No. 9:22-bk-10674-RC |
| | ) Chapter 7 |
| John E. King, | ) |
| | ) **PRETRIAL ORDER** |
| Alleged Debtor. | ) |
| | ) Date: April 15, 2026 |
| | ) Time: 9:00 p.m. |
| | Place: 1415 State Street |
| | Courtroom 201 |
| | Santa Barbara CA 93101 |

This matter came on for hearing on February 19, 2026, on a Court set Pretrial Hearing. Dismissed Debtor John E. King, and petitioning creditor Fence Factory, Inc. ("Fence Factory") had participated in a Joint Pretrial Statement, Wolverine Endeavors VIII, LLC ("Wolverine") had not participated. The Court made adjustments to the Proposed Unilateral Pretrial Stipulation and directed the parties to identify their witnesses and exhibits. The Court's Order was set forth in its Scheduling Order, docket 382.

Based upon the Scheduling Order, and consistent with the Court's rulings in open Court on February 19, 2026, IT IS ORDERED AS FOLLOWS:

1.    The following facts are admitted and require no proof.

a.  On August 31, 2022, Wolverine Endeavors VIII, LLC ("Wolverine") filed separate involuntary petitions against John and Carole King, husband and wife.

b.  On May 12, 2023, Fence Factory, Inc. ("Fence Factory") filed a joinder in the involuntary petitions.

c.  On July 21, 2025, this Court entered its Order (Docket 340) dismissing the Involuntary petition at the request of the petitioning creditors.

d.  The Dismissal (Docket 340) was not entered with the consent of the Debtor, as that phrase is used in 11 USC 303(i).

e.  The dismissed Debtor has not waived judgment under 11 USC 303(i).

f.  The alleged attorneys fees and costs incurred by dismissed debtor John King are as shown in Dismissed Debtor's Exhibit "a" attached hereto, and Exhibit "a" shall be admitted.

g.  The services on Exhibit "a" were billed at $525.00 per hour from the inception of the case to February 1, 2023, $575.00 per hour from February 1, 2023 to January 31, 2025, and at $650.00 per hour from February 1, 2025 to the present.

h.  The original petition was filed for Wolverine by Jessica Bagdanov of BG Law, an experienced Bankruptcy practitioner. It made no reference to the purchase of East West Bank's claim by Wolverine. It alleged the Alleged Debtor had less than 12 creditors.

i.  The Debtor moved to dismiss. Wolverine moved for leave to amend, making the argument that it thought all the creditors listed by the Kings, and known to Wolverine due to its possession of the King's general ledger, should not be counted because "at least 41 of [John's] creditors disclosed in the [Motion to Dismiss] appear unqualified under Section 303(b)(1) because they are either insiders of [John] or are likely recipients of avoidable transfers." (see Docket 207 p.2, lines 24-27). Wolverine never successfully challenged any of Mr. King's creditors or filed a motion on either ground.

j.  The Court permitted amendment.  Wolverine attached a proposed amended petition to its Motion for leave to amend.  The proposed amended petition also alleged less than 12 creditors Wolverine also failed to produce evidence of its purchase of the claim.

k.  After another round of briefings Wolverine filed an Amended Petition (Docket 44) attaching the purchase agreement that admitting it had only paid cash consideration of $1,000 to purchase this claim.

l.  Despite holding prepetition liens, Wolverine stated under oath in the original and amended petitions that its claim exceeded the value of the security, less senior liens, in the full amount of its claim.

m.  Prior to the filing of the involuntary petitions, Insurance Company of the West repeatedly refused to join as a filing petitioning creditor on the involuntary petitions because it knew, and told Wolverine, that it would require 3 petitioning creditors to file against John King.

n.  At the time it joined the petition, Fence Factory had an open account for fence rental with King Ventures, a dba of John King.

o.  The Debtor recorded King Venture's renewal of its fictitious business name statement with the Official Records of San Luis Obispo County on December 18, 2020, as Document No. 20202516.

p.  As depicted in the fictitious business name statement, John E. King is the only signatory as registrant and principal of King Ventures.  As also depicted in the fictitious business name statement, John E. King asserts that the business of King Ventures is conducted by "an individual."  The box indicating that the business is conducted by "a married couple" is not marked.

q.  Debtor listed Fence Factory as a pre-petition creditor of King Ventures in the list of creditors filed in this case.

r.  Steven Bennett on behalf of Fence Factory testified as described on Page 14, line 24 through Page 16 line 25 concerning his investigation into the Fence Factory obligation at the time he executed the joinder.

s.  Steven Bennett testified in his two (2) depositions, and at the evidentiary hearing, that Fence was paid no consideration to join the bankruptcy.

t.  There has been no evidence produced to show that Fence Factory or Steven Bennett ever received any consideration for agreeing to join the involuntary petition.

u.  Wolverine paid for an attorney for Fence Factory. The attorney had previously represented a Wolverine insider. He had never previously represented Fence Factory.

v.  In March of 2023, Wolverine sent subpoenas to 102 entities.

w.  Process servers served 30 of the subpoenas on the Kings themselves, despite the fact that insider creditors could not count toward the necessary 12 creditors.

x.  The subpoenas were served on recipients before service on counsel for the Kings.

y.  Wolverine withdrew more than half of the March 2023 subpoenas and limited the remaining ones to issues concerning billing and payment by the Kings.

z.  .No document received from the March 2023 subpoenas was used as a trial exhibit by Wolverine.

aa. In September of 2023, Wolverine sent 155 subpoenas.   All corporate documents, including complete general ledgers were demanded from numerous entities, most of whom were not on the alleged creditor list..

bb. The September 2023 subpoenas were served on recipients before service on counsel for the Kings.

cc. .No document received from the September 2023 subpoenas was used as a trial exhibit by Wolverine.

dd. Wolverine then sent a third batch of subpoenas.    This time, 40 subpoenas were sent. Included in this list were various entities not on the creditor list, as well as various entities that have already responded (to the March subpoenas).    All the subpoenas sought information far beyond anything which might lead to pertinent information for the coming evidentiary hearing.

ee. The third round of subpoenas were served on recipients before service on counsel for the Kings.

ff. Wolverine did not provide the responsive documents from the third round of subpoenas to the alleged debtors.

gg. No document received from the third round of subpoenas was used as a trial exhibit by Wolverine.

hh. In the eventual pretrial stipulation (Docket 168),  Wolverine identified a single exhibit to be admitted at trial.  This exhibit is a public record document that needed no subpoena to obtain.

ii. On August 17, 2023, Wolverine served John King with at least 46 Interrogatories (counting subparts) in this case.  John King replied timely on September 18, 2023.

jj. On May 24, 2024, Wolverine served John King with at least 16 Interrogatories (counting subparts) in this case.  John King replied timely on June 24, 2024.

kk. On May 20, 2024, Wolverine served John King with at least 22 Interrogatories (counting subparts) in this case.  John King replied timely on June 24, 2024

ll. On September 29, 2025, Wolverine served John King with at least 24 Interrogatories (counting subparts) in this case.  John King replied timely on October 28, 2025.

mm.    In February 2023,  Wolverine served John King with 7 Requests for Admissions in this case.  John King replied timely on March 22, 2023.

nn. On August 17, 2023, Wolverine served John King with 86 Requests for Admissions in this case. John King replied timely on September 23, 2023.

oo. On May 20, 2024, Wolverine served John King with 34 Requests for Admissions in this case. John King replied timely on June 18, 2024.

pp. On August 17, 2023, Wolverine served John King with 245 Requests for Production of Documents in this case. John King replied timely on September 18, 2023. John King supplemented his response on June 25, 2024.

qq. Fence Factory did not propound any subpoenas or discovery on any party since the trial in this matter on October 3, 2023.

rr. Fence Factory did not file a single Motion, did not issue a single subpoena, did not take a single deposition, and did not issue a single discovery request to the Debtor or any other party involved in this case, except a Motion to withdraw its joinder.

ss. On May 24, 2024, Wolverine served John King with 10 Requests for Production of Documents in this case. John King replied timely on June 24, 2023.

tt. On September 29, 2025, Wolverine served John King with 26 Requests for Production of Documents in this case. John King replied timely on October 28, 2025.

uu. On or about October 15, 2025, Wolverine Subpoenaed from Beall & Burkhardt, APC --- Categories of Documents in this case. Beall & Burkhardt, APC replied timely on November 14, 2025.

vv. Wolverine took the deposition of John King in this case on July 17, 2024.

2    The following issues of fact, and no others, remain to be litigated.

a. The amount of fees and costs by the dismissed debtor on and after February 1, 2026.

b. Wolverine's purpose in filing the involuntary petition.

c. Fence Factory's purpose in joining the involuntary petition.

d.  Whether as of the Petition Date, Fence Factory held a noncontingent liquidated claim against King Ventures of $44.55 based on an invoice dated August 19, 2022. That amount is not contingent as to liability or the subject of a bona fide dispute as to liability or amount.

e.  Whether the Fence Factory account was always paid current.

f.  Whether Wolverine hired counsel for Fence Factory in this matter.

g.  Whether the Dismissed Debtor's fees should appropriately be adjusted to a higher hourly rate based upon Wolverine's Superior Court position.

h.  Whether Wolverine filed a Motion with the Superior Court seeking to increase its judgment by $1,127,511.04 for the fees and costs in pursuing the Kings since it purchased the judgment.

i.  Whether in the Superior Court pleading, Wolverine requested that Brett Ramsaur be compensated at $839.00 per hour and Casey Donoyan be compensated at $1141 per hour for their services in these involuntary cases.

j.  Whether in the Superior Court pleading, Wolverine has taken the position that an attorney with at least 20 years of experience is entitled to be compensated at $1141 per hour.

k.  Whether on June 25, 2024, John King was informed by the president of Monterey County Bank that despite its hope that their relationship could continue into the future, it could not participate in a grant option with an LLC in which John King had ownership, due to "the pending bankruptcy, and Wolverine's multiple calls and aggressive behavior" towards the bank. The president, Mr. Chrietzberg, stated that the bank could not afford to risk Wolverine's implied litigation.

l.  Whether prior to the involuntary filing, Wolverine had done extensive discovery. It had obtained documents by subpoenaing 18 other parties, either the King's lenders and their

banks. It had levied on their Social Security Accounts, despite the fact that they were and are exempt. Mr. King had had three separate examinations under oath, on February 17, 2022 (6 ½ hours); February 25, 2022 (6 ½ hours) and March 22, 2022, (5 ½ hours). The King's entire general ledger had been produced in discovery. The general ledger is a granular statement of all financial transaction of the subject.

m. Whether prior to the filing of the involuntary petitions, Wolverine or its assignor had taken steps to record an abstract of judgment and further had created a. "ORAP" lien based upon noticing a Judgment Debtor Exam.

n. Whether on May 29, 2023, Counsel for John and Carole King sent to counsel for all petitioning creditors, without need for any formal discovery, invoices and proofs of payment for over 40 creditors which had been listed as creditors of John and Carole King in their motions to dismiss.

o. Whether the March 2023 subpoenas sought broad disclosure about various issues, mostly irrelevant to the issue of whether the involuntary case could stand.

p. Whether process servers served 30 of the March 2023 subpoenas on the Kings themselves, despite the fact that insider creditors could not count toward the necessary 12 creditors.

q. Whether Wolverine provided the responsive documents from the March 2023 subpoenas to the alleged debtors.

r. Whether all communications (not time limited) between the subpoena recipient and not only the alleged Debtors but also with 91 other entities was another common demand in the September 2023 subpoenas.

s. Whether the March 2023 subpoenas sought broad disclosure about various issues, mostly irrelevant to the issue of whether the involuntary case could stand

t. Whether. in September 2025, Wolverine sent another 48 subpoenas.

u. Whether Wolverine provided the responsive documents from the September 2025 subpoenas to the dismissed debtor.

3   The following issues of law, and no others, remain to be litigated.

a. If the Court awards fees and costs, whether creditors should be held jointly and severally liable, or whether the Court should assess damages to each petitioning creditor in relation to their conduct.

b. Whether filing a case knowing the petition cannot stand is bad faith. Dismissed Debtor's authority is  In re Laroche, 969 F. 2d 1299 (1st Cir. 1992), Atlas Mach & Iron Works, Inc. v. Bethlehem Steel Corp., 986 F. 2d 709, 714-716 (4th Cir. 1993).

c. Whether a case filed with ill will, malice, or with the intention to embarrass or harass the debtor is filed in bad faith. Dismissed Debtor's authority is In re Forever Green Athletic Fields, Inc., 804 F. 3d 328, 336 (3rd Cir. 2015), Subway Equip. Leasing Corp. v. Sims, 994 F. 2d 210, 222 (5th Cir. 1993).

d. Whether failure of the petitioning creditor's to investigate the pertinent 303 facts is bad faith. Dismissed Debtor's authority is  In re Walden, 781 F. 2d 1121, 1122 (5th Cir. 1986); In re Reveley, 148 B.R. 398, 408 (Bkr. S.D.N.Y. 1992).

e. Whether filing the case as part of litigation strategy is bad faith. Dismissed Debtor's authority is  In re Forever Green Athletic Fields, Inc., 804 F. 3d 328, 336 (3rd Cir. 2015); Subway Equip. Leasing Corp. v. Sims, 994 F. 2d 210 (5th Cir. 1993).

4.  Attached is a list of exhibits intended to be offered at the trial by each party, other than exhibits to be used for impeachment only. The parties have exchanged copies of all exhibits.

A.   Dismissed Debtor's Exhibits:

a.   Spreadsheet showing fees incurred

b.   Billing Statements previous attached:  Exhibit A to Docket 245; Exhibit A to Docket 272; Exhibit A to Docket 342; Exhibit A to Docket 361.

c.   Notice of Motion and Motion for Attorney's Fees and Costs (portion) attached as Exhibit B to Docket 361.

d.   Declaration of K. Todd Curry in Support of Motion for Attorney's Fees and Costs (portion) attached as Exhibit C to Docket 361.

e.   Declaration of Myron Moskowitz in Support of Motion for Attorney's Fees and Costs (portion) attached as Exhibit E to Docket 361.

f.   Declaration of Brett H. Ramsaur in Support of Motion for Attorney's Fees and Costs (portion) attached as Exhibit F to Docket 361.

g.   Letter from Charles Chrietzberg to John King attached as Exhibit B to Docket 342.

h.   Decision in Case No. A165362 (East West Bank v. King and Akro).

i.   Excerpt from deposition of Steven Bennett attached as Exhibit C to Docket 245.

j.   Email Beall to Ramsaur, Leo, Gauthier and Katz dated 5/29/23 together with attachment.

k.   Email from Donoyan to Beall dated 9/24/25 and list of Subpoenas.

l.   Illustrative subpoena 3/31/23 to American Riviera Bank.

m.   Illustrative subpoena 3/31/23 to Apple Farm.

n.   Illustrative subpoena 8/25/23 to Distinctive Resorts.

o.   Additional billings from Beall & Burkhardt, APC for January-March 2026.

p.   Invoices and checks demonstrating Fence Factory was paid in advance.

B.   Fence Factory Exhibits

C.   Wolverine Exhibits

5.      Attached is a list of witnesses intended to be offered at the trial by each party.  :

Dismissed Debtor's Declarations:  Declaration of William C. Beall attached to Docket 245, pp. 19-23.

Declaration of John E. King attached to Docket 245, p. 24

Declaration of William C. Beall attached to Docket 255, pp. 13-14

Declaration of John E. King attached to Docket 270, pp. 1-3

Declaration of Stephen W. Tulcus attached to Docket 271, pp. 1-2

Declaration of William C. Beall attached to Docket 272, pp. 1-6

Declaration of William C. Beall attached to Docket 342, p.8

Declaration of John E. King attached to Docket 342, p 9

Declaration of William C. Beall attached to Docket 361, pp.9-10

Dismissed Debtors live witnesses:

William C. Beall-direct examination will be by Paul F. Ready, counsel for JG King

John King

Steve Tulcus

Fence Factory Witnesses

Wolverine Witnesses

6.      Other matters that might affect the trial such as anticipated motions in limine, motions to withdraw reference due to timely jury trial demand pursuant to LBR 9015-2, or other pretrial motions:  None.

7.      All discovery is complete.

8.      The parties are ready for trial.

9.      The estimated length of trial is one day.

1

2          The foregoing admissions have been made by the parties, and the parties have specified the

3   foregoing issues of fact and law remaining to be litigated. Therefore, this order supersedes the pleadings

4   and governs the course of the evidentiary hearing of this cause, unless modified to prevent manifest

5   injustice.

6          IT IS SO ORDERED.

7          #  #  #

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT C

1
2
3
4

**BEALL & BURKHARDT, APC**
WILLIAM C. BEALL, STATE BAR NO. 97100
ERIC W. BURKHARDT, STATE BAR NO. 132812
CARISSA N. HOROWITZ, STATE BAR NO. 274814
1114 STATE STREET
LA ARCADA BUILDING, SUITE 200
SANTA BARBARA, CALIFORNIA, 93101
(805) 966-6774, FAX (805) 963-5988

5  Counsel for Alleged Debtor

6

7               UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9

10                      NORTHERN DIVISION

11

12  In re                                    ) Bk. No. 9:22-bk-10674-RC
                                             ) Chapter 7
13  John E. King,                            )
                                             ) **PROPOSED ALTERNATE PRETRIAL**
14                         Alleged Debtor.   ) **ORDER**
                                             )
15  _____ )
                                               Date:  April 15, 2026
16                                             Time:  9:00 p.m.
                                               Place: 1415 State Street
17                                                     Courtroom 201
                                                       Santa Barbara CA 93101

18          Dismissed Debtor John E. King, and petitioning creditors Fence Factory, Inc. ("Fence

19  Factory"), and Wolverine Endeavors VIII, LLC ("Wolverine"), bring their pretrial stipulation

20  concerning the evidentiary hearing on the request of John King for damages under 11 USC 303(i) as

21  follows:

22      1.  The following facts are admitted and require no proof.

23

24          a.  On August 31, 2022, Wolverine Endeavors VIII, LLC ("Wolverine") filed separate

25              involuntary petitions against John and Carole King, husband and wife.

26          b.  On May 12, 2023, Fence Factory, Inc. ("Fence Factory") filed a joinder in the

27              involuntary petitions.

28

1

c.  On July 21, 2025, this Court entered its Order (Docket 340) dismissing the Involuntary petition at the request of the petitioning creditors.

d.  The Dismissal (Docket 340) was not entered with the consent of the Debtor, as that phrase is used in 11 USC 303(i).

e.  The dismissed Debtor has not waived judgment under 11 USC 303(i).

f.  The alleged attorneys fees and costs incurred by dismissed debtor John King are as shown in Dismissed Debtor's Exhibit "a" attached hereto, and Exhibit "a" shall be admitted.

g.  The services on Exhibit "a" were billed at $525.00 per hour from the inception of the case to February 1, 2023, $575.00 per hour from February 1, 2023 to January 31, 2025, and at $650.00 per hour from February 1, 2025 to the present.

h.  The original petition was filed for Wolverine by Jessica Bagdanov of BG Law, an experienced Bankruptcy practitioner.  It made no reference to the purchase of East West Bank's claim by Wolverine.  It alleged the Alleged Debtor had less than 12 creditors.

i.  The Debtor moved to dismiss. Wolverine moved for leave to amend, making the argument that it thought all the creditors listed by the Kings, and known to Wolverine due to its possession of the King's general ledger, should not be counted because "at least 41 of [John's] creditors disclosed in the [Motion to Dismiss] appear unqualified under Section 303(b)(1) because they are either insiders of [John] or are likely recipients of avoidable transfers." (see Docket 207 p.2, lines 24-27).  Wolverine never successfully challenged any of Mr. King's creditors or filed a motion on either ground.

j.  The Court permitted amendment.  Wolverine attached a proposed amended petition to its Motion for leave to amend.  The proposed amended petition also alleged less than 12 creditors Wolverine also failed to produce evidence of its purchase of the claim.

2

k. After another round of briefings Wolverine filed an Amended Petition (Docket 44) attaching the purchase agreement that admitting it had only paid cash consideration of $1,000 to purchase this claim.

l. Despite holding prepetition liens, Wolverine stated under oath in the original and amended petitions that its claim exceeded the value of the security, less senior liens, in the full amount of its claim.

m. Prior to the filing of the involuntary petitions, Insurance Company of the West repeatedly refused to join as a filing petitioning creditor on the involuntary petitions because it knew, and told Wolverine, that it would require 3 petitioning creditors to file against John King.

n. At the time it joined the petition, Fence Factory had an open account for fence rental with King Ventures, a dba of John King.

o. The Debtor recorded King Venture's renewal of its fictitious business name statement with the Official Records of San Luis Obispo County on December 18, 2020, as Document No. 20202516.

p. As depicted in the fictitious business name statement, John E. King is the only signatory as registrant and principal of King Ventures.  As also depicted in the fictitious business name statement, John E. King asserts that the business of King Ventures is conducted by "an individual."  The box indicating that the business is conducted by "a married couple" is not marked.

q. Debtor listed Fence Factory as a pre-petition creditor of King Ventures in the list of creditors filed in this case.

r. Steven Bennett on behalf of Fence Factory testified as described on Page 14, line 24 through Page 16 line 25 concerning his investigation into the Fence Factory obligation at the time he executed the joinder.

3

s.  Steven Bennett testified in his two (2) depositions, and at the evidentiary hearing, that Fence was paid no consideration to join the bankruptcy.

t.  There has been no evidence produced to show that Fence Factory or Steven Bennett ever received any consideration for agreeing to join the involuntary petition.

u.  Wolverine paid for an attorney for Fence Factory.  The attorney had previously represented a Wolverine insider.  He had never previously represented Fence Factory.

v.  In March of 2023, Wolverine sent subpoenas to 102 entities.

w.  Process servers served 30 of the subpoenas on the Kings themselves, despite the fact that insider creditors could not count toward the necessary 12 creditors.

x.  The subpoenas were served on recipients before service on counsel for the Kings.

y.  Wolverine withdrew more than half of the March 2023 subpoenas and limited the remaining ones to issues concerning billing and payment by the Kings.

z.  .No document received from the March 2023 subpoenas was used as a trial exhibit by Wolverine.

aa.  In September of 2023, Wolverine sent 155 subpoenas.   All corporate documents, including complete general ledgers were demanded from numerous entities, most of whom were not on the alleged creditor list..

bb.  The September 2023 subpoenas were served on recipients before service on counsel for the Kings.

cc.  .No document received from the September 2023 subpoenas was used as a trial exhibit by Wolverine.

dd.  Wolverine then sent a third batch of subpoenas.   This time, 40 subpoenas were sent. Included in this list were various entities not on the creditor list, as well as various entities that have already responded (to the March subpoenas).   All the subpoenas sought

information far beyond anything which might lead to pertinent information for the coming evidentiary hearing.

ee. The third round of subpoenas were served on recipients before service on counsel for the Kings.

ff. Wolverine did not provide the responsive documents from the third round of subpoenas to the alleged debtors.

gg. No document received from the third round of subpoenas was used as a trial exhibit by Wolverine.

hh. In the eventual pretrial stipulation (Docket 168), Wolverine identified a single exhibit to be admitted at trial. This exhibit is a public record document that needed no subpoena to obtain.

ii. On August 17, 2023, Wolverine served John King with at least 46 Interrogatories (counting subparts) in this case. John King replied timely on September 18, 2023.

jj. On May 24, 2024, Wolverine served John King with at least 16 Interrogatories (counting subparts) in this case. John King replied timely on June 24, 2024.

kk. On May 20, 2024, Wolverine served John King with at least 22 Interrogatories (counting subparts) in this case. John King replied timely on June 24, 2024

ll. On September 29, 2025, Wolverine served John King with at least 24 Interrogatories (counting subparts) in this case. John King replied timely on October 28, 2025.

mm.    In February 2023, Wolverine served John King with 7 Requests for Admissions in this case. John King replied timely on March 22, 2023.

nn. On August 17, 2023, Wolverine served John King with 86 Requests for Admissions in this case. John King replied timely on September 23, 2023.

oo. On May 20, 2024, Wolverine served John King with 34 Requests for Admissions in this case. John King replied timely on June 18, 2024.

pp. On August 17, 2023, Wolverine served John King with 245 Requests for Production of Documents in this case.   John King replied timely on September 18, 2023.  John King supplemented his response on June 25, 2024.

qq. Fence Factory did not propound any subpoenas or discovery on any party since the trial in this matter on October 3, 2023.

rr.    Fence Factory did not file a single Motion, did not issue a single subpoena, did not take a single deposition, and did not issue a single discovery request to the Debtor or any other party involved in this case, except a Motion to withdraw its joinder.

ss.    On May 24, 2024, Wolverine served John King with 10 Requests for Production of Documents in this case.   John King replied timely on June 24, 2023.

tt. On September 29, 2025, Wolverine served John King with 26 Requests for Production of Documents in this case.   John King replied timely on October 28, 2025.

uu. On or about October 15, 2025, Wolverine Subpoenaed from  Beall & Burkhardt, APC --- Categories of Documents in this case.    Beall & Burkhardt, APC replied timely on November 14, 2025.

vv. Wolverine took the deposition of John King in this case on July 17, 2024.

2    The following issues of fact, and no others, remain to be litigated.

a.   The amount of fees and costs by the dismissed debtor on and after February 1, 2026.

b.   Wolverine's purpose in filing the involuntary petition.

c.   Fence Factory's purpose in joining the involuntary petition.

d.   Whether as of the Petition Date, Fence Factory held a noncontingent liquidated claim against King Ventures of $44.55 based on an invoice dated August 19, 2022. That amount is not contingent as to liability or the subject of a bona fide dispute as to liability or amount.

e.   Whether the Fence Factory account was always paid current.

f.  Whether Wolverine hired counsel for Fence Factory in this matter.

g.  Whether the Dismissed Debtor's fees should appropriately be adjusted to a higher hourly rate based upon Wolverine's Superior Court position.

h.  Whether Wolverine filed a Motion with the Superior Court seeking to increase its judgment by $1,127,511.04 for the fees and costs in pursuing the Kings since it purchased the judgment.

i.  Whether in the Superior Court pleading, Wolverine requested that Brett Ramsaur be compensated at $839.00 per hour and Casey Donoyan be compensated at $1141 per hour for their services in these involuntary cases.

j.  Whether in the Superior Court pleading, Wolverine has taken the position that an attorney with at least 20 years of experience is entitled to be compensated at $1141 per hour.

k.  Whether on June 25, 2024, John King was informed by the president of Monterey County Bank that despite its hope that their relationship could continue into the future, it could not participate in a grant option with an LLC in which John King had ownership, due to "the pending bankruptcy, and Wolverine's multiple calls and aggressive behavior" towards the bank.  The president, Mr. Chrietzberg, stated that the bank could not afford to risk Wolverine's implied litigation.

l.  Whether prior to the involuntary filing, Wolverine had done extensive discovery.  It had obtained documents by subpoenaing 18 other parties, either the King's lenders and their banks.  It had levied on their Social Security Accounts, despite the fact that they were and are exempt.  Mr. King had had three separate examinations under oath, on February 17, 2022 (6 ½ hours); February 25, 2022 (6 ½ hours) and  March 22, 2022, (5 ½ hours).  The King's entire general ledger had been produced in discovery.  The general ledger is a granular statement of all financial transaction of the subject.

m.  Whether prior to the filing of the involuntary petitions, Wolverine or its assignor had taken steps to record an abstract of judgment and further had created a. "ORAP" lien based upon noticing a Judgment Debtor Exam.

n.  Whether on May 29, 2023, Counsel for John and Carole King sent to counsel for all petitioning creditors, without need for any formal discovery, invoices and proofs of payment for over 40 creditors which had been listed as creditors of John and Carole King in their motions to dismiss.

o.  Whether the March 2023 subpoenas sought broad disclosure about various issues, mostly irrelevant to the issue of whether the involuntary case could stand.

p.  Whether process servers served 30 of the March 2023 subpoenas on the Kings themselves, despite the fact that insider creditors could not count toward the necessary 12 creditors.

q.  Whether Wolverine provided the responsive documents from the March 2023 subpoenas to the alleged debtors.

r.  Whether all communications (not time limited) between the subpoena recipient and not only the alleged Debtors but also with 91 other entities was another common demand in the September 2023 subpoenas.

s.  Whether the March 2023 subpoenas sought broad disclosure about various issues, mostly irrelevant to the issue of whether the involuntary case could stand

t.  Whether. in September 2025, Wolverine sent another 48 subpoenas.

u.  Whether Wolverine provided the responsive documents from the September 2025 subpoenas to the dismissed debtor.

3   The following issues of law, and no others, remain to be litigated.

a.  If the Court awards fees and costs, whether creditors should be held jointly and severally liable, or whether the Court should assess damages to each petitioning creditor in relation to their conduct.

b.  Whether filing a case knowing the petition cannot stand is bad faith.  Dismissed Debtor's authority is  In re Laroche, 969 F. 2d 1299 (1st Cir. 1992), Atlas Mach & Iron Works, Inc. v. Bethlehem Steel Corp., 986 F. 2d 709, 714-716 (4th Cir. 1993).  Petitioning Creditor's authority is _____.

c.  Whether a case filed with ill will, malice, or with the intention to embarrass or harass the debtor is filed in bad faith.  Dismissed Debtor's authority is In re Forever Green Athletic Fields, Inc., 804 F. 3d 328, 336 (3rd Cir. 2015), Subway Equip. Leasing Corp. v. Sims, 994 F. 2d 210, 222 (5th Cir. 1993).  Petitioning Creditor's authority is _____.

d.  Whether failure of the petitioning creditor's to investigate the pertinent 303 facts is bad faith.  Dismissed Debtor's authority is  In re Walden, 781 F. 2d 1121, 1122 (5th Cir. 1986); In re Reveley, 148 B.R. 398, 408 (Bkr. S.D.N.Y. 1992).  Petitioning Creditor's authority is _____

e.  Whether filing the case as part of litigation strategy is bad faith.  Dismissed Debtor's authority is  In re Forever Green Athletic Fields, Inc., 804 F. 3d 328, 336 (3rd Cir. 2015); Subway Equip. Leasing Corp. v. Sims, 994 F. 2d 210 (5th Cir. 1993).  Petitioning Creditor's authority is _____

4.  Attached is a list of exhibits intended to be offered at the trial by each party, other than exhibits to be used for impeachment only. The parties have exchanged copies of all exhibits.

A.   Dismissed Debtor's Exhibits:

a.   Spreadsheet showing fees incurred

b. Billing Statements previous attached:  Exhibit A to Docket 245; Exhibit A to Docket 272; Exhibit A to Docket 342; Exhibit A to Docket 361.

c. Notice of Motion and Motion for Attorney's Fees and Costs (portion) attached as Exhibit B to Docket 361.

d. Declaration of K. Todd Curry in Support of Motion for Attorney's Fees and Costs (portion) attached as Exhibit C to Docket 361.

e. Declaration of Myron Moskowitz in Support of Motion for Attorney's Fees and Costs (portion) attached as Exhibit E to Docket 361.

f. Declaration of Brett H. Ramsaur in Support of Motion for Attorney's Fees and Costs (portion) attached as Exhibit F to Docket 361.

g. Letter from Charles Chrietzberg to John King attached as Exhibit B to Docket 342.

h. Decision in Case No. A165362 (East West Bank v. King and Akro).

i. Excerpt from deposition of Steven Bennett attached as Exhibit C to Docket 245.

j. Email Beall to Ramsaur, Leo, Gauthier and Katz dated 5/29/23 together with attachment.

k. Email from Donoyan to Beall dated 9/24/25 and list of Subpoenas.

l. Illustrative subpoena 3/31/23 to American Riviera Bank.

m. Illustrative subpoena 3/31/23 to Apple Farm.

n. Illustrative subpoena 8/25/23 to Distinctive Resorts.

B. Wolverine's Exhibits

1. Judgment in the amount of $5,434,547.68 entered in East West Bank v. John E. King, et al. San Francisco Superior Court Case No. CGC-10-505989 on 09/14/2011 (the "EWB Judgment").
2. Renewal of EWB Judgment dated 6/21/2021.
3. Assignment of EWB Judgment to Wolverine.
4. Order Staying Enforcement of EWB Judgment (San Francisco).
5. John King Personal Financial Statement dated 12/31/2021
6. General Ledger dated 12/31/2021
7. Supplemental General Ledger dated 7/31/2024

8.   John King's Motion to Dismiss [Doc. No. 25].

9.   Carole King's Motion to Dismiss filed in BK Case No. 9:22-bk-10673-RC ("Carole's Case").

10.  Carole King's Responses to Requests for Admission dated 9/18/2023.

11.  Motion to Quash [Doc. No. 112].

12.  Joinder to Motion to Quash [Doc No. 116].

13.  Notice of Joinder to Motion to Quash [Doc. No. 121].

14.  Notice of Joinder to Motion to Quash [Doc. No. 122].

15.  Notice of Withdrawal of Subpoenas [Doc. No. 124].

16.  Motion to Quash [Doc. No. 141].

17.  Notice of Joinder to Motion to Quash [Doc. No. 143].

18.  Notice of Joinder to Motion to Quash [Doc. No. 163].

19.  Opposition to Motion to Quash [Doc. No. 167].

20.  Declaration of Anthony O'Neill [Doc. No. 173].

21.  Order on Alleged Debtors Motion to Quash [Doc. No. 185].

22.  Order on Motion to Dismiss Involuntary Petition [Doc. No. 207].

23.  Opposition to Motion for Damages [Doc. No. 252]

24.  Carole King's Motion for Damages [Doc. No. 170 in Carole's Case].

25.  Motion to Approve Compromise [Doc. No. 264].

26.  Memo of Points and Authorities in Support of Motion for Damages [Doc. No. 268].

27.  Supplemental Declaration of John E. King [Doc. No. 270].

28.  Opposition to Motion for Damages [Doc. No. 275].

29.  Declaration of Anthony O'Neill [Doc. No. 276].

30.  Opposition to Memo of Points and Authorities in Support of Motion for Damages [Doc. No. 278].

31.  BAP Opinion [Doc. No. 306].

32.  BAP Order Dismissing Appeal [Doc. No. 307].

33.  Motion to Approve Compromise [Doc. No. 308].

34.  Order Approving Motion to Compromise [Doc. No. 321].

35.  Order Approving Motion to Compromise [Doc. No. 322].

36.  Motion to Approve Stipulation to Dismiss Case [Doc. No. 334].

37.  Order Approving Motion to Approve Stipulation to Dismiss Case [Doc. No. 340].

38.  Opposition to Motion for Damages [Doc. No. 346].

39.  John King's Responses to Requests for Production of Documents.

40.  King Marriage Certificate.

41.  Stipulation by and Between Wolverine and Rosendo Gonzalez [Doc. No. 359].

42.  Supplemental Opposition to Motion for Damages [Doc. No. 360].

43.  Application for Appointment of Guardian ad Litem filed in SLO County Superior Court bearing case no. 21cv-0708 (the "SLO GAL App").

44.  Order Granting SLO GAL App.

45.  Civil RICO Complaint ("RICO Complaint") filed in CA Central District Courtbearing case no. 2:25-cv-11946 (the "RICO Case").

46.  Motion for the Appointment of a Guardian ad Litem in the RICO Case (the "RICO GAL App").

47.  Order approving the RICO GAL App.

48.  Subpoena duces Tecum to Monterey County Bank ("MCB SDT").

49.  Responses by Monterey County Bank to MCB SDT.

50.  Subpoena duces Tecum to Beall & Burkhardt ("BB SDT").

51. Responses by Beall & Burkhardt to BB SDT.
52. Subpoena duces Tecum to Glick Haupt Marino ("GHM SDT").
53. Responses by Glick Haupt Marino to GHMSDT.
54. Transcript of Judgment Debtor Exam of John E. King – 02/17/2022
55. Transcript of Judgment Debtor Exam of John E. King – 02/25/2022
56. Transcript of Judgment Debtor Exam of John E. King – 03/22/2022
57. Transcript of Judgment Debtor Exam of John E. King – 08/24/2024
58. Transcript of Examination of John G. King – 08/29/2024
59. Transcript of Examination of Terri Reay – 09/19/2024
60. Transcript of Evidentiary Hearing on 10/3/2023
61. Transcript of Deposition of John E. King on 7/17/2024
62. Transcript of Evidentiary Hearing in Carole's Case on 3/19/2025
63. Carole King's Durable Power of Attorney
64. CA Appellate Court Opinion A165362
65. CA Appellate Court Opinion A165977

5.    Attached is a list of witnesses intended to be offered at the trial by each party.  All direct

testimony has been done by declaration.  The parties desire to cross-examine the following witnesses:

_____.

Dismissed Debtor's Declarations:

Declaration of William C. Beall attached to Docket 245, pp. 19-23.

Declaration of John E. King attached to Docket 245, p. 24

Declaration of William C. Beall attached to Docket 255, pp. 13-14

Declaration of John E. King attached to Docket 270, pp. 1-3

Declaration of Stephen W. Tulcus attached to Docket 271, pp. 1-2

Declaration of William C. Beall attached to Docket 272, pp. 1-6

Declaration of William C. Beall attached to Docket 342, p.8

Declaration of John E. King attached to Docket 342, p 9

Declaration of William C. Beall attached to Docket 361, pp.9-10

Wolverine's Declarations:

Declaration of Anthony O'Neill [Doc. No. 173].

Declaration of Anthony O'Neill [Doc. No. 276].

1    <u>Wolverine's Witnesses</u>:

2    Anthony O'Neill

3    John G. King

4    Carole D. King

5    Mimi Lyons

6    Charles Chrietzberg

7    Terri Reay

8

9    6.       Other matters that might affect the trial such as anticipated motions in limine, motions

10   to withdraw reference due to timely jury trial demand pursuant to LBR 9015-2, or other pretrial

11   motions:  None.

12   7.       All discovery is complete.

13   8.       The parties are ready for trial.

14   9.       The estimated length of trial is one day.

15   The  foregoing  admissions  have  been  made  by  the  parties,  and  the  parties  have  specified  the

16   foregoing issues of fact and law remaining to be litigated. Therefore, this order supersedes the pleadings

17   and governs the course of trial of this cause, unless modified to prevent manifest injustice.

18   # # #

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
445 S. Figueroa Street, 18th Floor, Los Angeles, California 90071.

A true and correct copy of the foregoing document entitled *(specify)* **OBJECTION TO PRE-TRIAL ORDER
LODGED ON FEBRUARY 26, 2026 [DOC. NO. 388]; DECLARATION OF CASEY Z. DONOYAN** will be served
or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the
manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling
General Order(s) and LBR, the foregoing document will be served by the court via NEF and hyperlink to the
document. On **February 27, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding
and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the
email addresses stated below:

- **William C Beall**    Will@BeallandBurkhardt.com, carissa@beallandburkhardt.com
- **Casey Z Donoyan**    cdonoyan@lakklawyers.com, ncondren@lakklawyers.com
- **Jon F Gauthier**    jgauthier@ftblaw.com, jrobinson@ftblaw.com
- **Hal D Goldflam**    hgoldflam@frandzel.com, sking@frandzel.com,autodocket@frandzel.com
- **Karen L Grant**    kgrant@silcom.com
- **Michael Haupt**    michael@ghmlaw.com
- **Carissa N Horowitz**    carissa@davidovichlaw.com, artyc@aol.com;castlesb@aol.com
- **Nicolino Iezza**    niezza@spiwakandiezza.com
- **Lior Katz**    lior@katzlaw.com
- **Thomas Scott Leo**    sleo@leolawpc.com, paralegal@leolawpc.com
- **Ashley Neglia**    ashley.neglia@eastwestbank.com
- **Teresa L Polk**    tp@smtdlaw.com, svargas@smtdlaw.com
- **Paul F Ready**    becky@farmerandready.com
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov
- **Gerrick Warrington**    gwarrington@frandzel.com, achase@frandzel.com,autodocket@frandzel.com

2. **SERVED BY UNITED STATES MAIL:**
On **February 27, 2026,** I served the following persons and/or entities at the last known addresses in this bankruptcy case
or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first
class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge
will be completed no later than 24 hours after the document is filed.

Paul Metchik, Attorney at Law, 1316 Broad St., San Luis Obispo, CA 93401

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **N/A** I served the following persons
and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 2/27/2026 | Casey Z. Donoyan | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.